# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### APRIL SESSION, 1999

FILED

August 24, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| **STANLEY P. POSLEY,** | ) | **C.C.A. NO. 03C01-9809-CR-00307** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | **HAMILTON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. STEPHEN M. BEVIL** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | **(Post-Conviction)** |

FOR THE APPELLANT:

STANLEY P. POSLEY
Pro-Se Appellant
C/O B.M.C.X.
P. O. Box 2000
Wartburg, TN

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

ELLEN H. POLLACK
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243

BILL COX
District Attorney General

BARRY A. STEELMAN
MARK HOOTEN
Assistant District Attorneys
600 Market Street
Chattanooga, TN  37402

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On February 23, 1996, Petitioner Stanley P. Posley pled guilty in the Hamilton County Criminal Court to five counts of selling cocaine. That same day, the trial court sentenced Petitioner as a Range I standard offender to a term of eight years for each conviction and the trial court ordered the sentences to run concurrently. Petitioner filed a petition for post-conviction relief on May 10, 1996, and an amended petition for post-conviction relief on October 17, 1996. After a hearing on September 29, 1997, the post-conviction court dismissed the petition. Petitioner challenges the dismissal of his petition, raising the following issues:

    1) whether Petitioner received ineffective assistance of counsel;

    2) whether Petitioner's guilty pleas were voluntary; and

    3) whether the post-conviction judge was biased against Petitioner.

After a review of the record, we affirm the judgment of the post-conviction court.

## I. BACKGROUND

At the guilty plea hearing, Petitioner stated that he had read and understood the request to plead guilty form. When the trial court asked Petitioner whether he had discussed the charges against him with his counsel, Petitioner stated that he had. When the trial court asked Petitioner whether he understood that the total sentence could be anywhere between eight and thirty years, Petitioner stated that he did. The trial court then advised Petitioner that he had the right to plead not guilty and insist on a jury trial, that he had the right to be represented at trial, that he had the right to confront the witnesses against him,

that he had the right to subpoena witnesses on his behalf, that he had a privilege against self-incrimination, that he had the right to appeal if he was convicted at trial, that he had the right to counsel on appeal, and that his convictions in this case could be used to enhance punishment in subsequent cases. After explaining each right, the trial court asked Petitioner whether he understood the right, and Petitioner stated that he did.

After the trial court explained Petitioner's rights, the court asked Petitioner whether he had been taking any medication or drugs that would affect his decision making. Petitioner stated that he had not. The trial court then asked Petitioner whether he had been forced, coerced, or threatened into pleading guilty and Petitioner stated that he had not. The trial court then asked Petitioner whether the decision to plead guilty was his own, and Petitioner stated that it was. In addition, the trial court asked Petitioner whether he had discussed the matter with his counsel and whether he was satisfied with the work of his counsel. Petitioner indicated that he had discussed the matter with his counsel and that he was satisfied with his counsel's performance.

Richard Mabee, Petitioner's trial counsel, testified at the post-conviction hearing that he had told Petitioner that he had the right to insist on a trial and if he did so, he would be represented by counsel. Mabee testified that although he did not specifically remember what he had done in this case, he always told every client everything he knew about the State's case, what the proof might be, and what the possible defenses were and then gave the client the option of whether to insist on a trial.

Mabee testified that he had advised Petitioner that if he went to trial, he faced the possibility of being convicted, of being sentenced in a higher range, and of receiving a higher sentence than the State had offered in the plea agreement. Mabee also testified that he had explained the plea agreement to Petitioner and believed that Petitioner had understood the explanation.

Mabee denied telling Petitioner that if he insisted on trial, he had no chance of winning. Mabee also denied telling Petitioner that if he went to trial, he would likely receive a sixty year sentence. In addition, Mabee denied that he refused to show Petitioner certain discovery materials when Petitioner asked to see them.

Petitioner testified that before he pled guilty, he had asked Mabee to show him various materials obtained during discovery and Mabee had stated that he did not need to see them. Petitioner testified that even though he knew that he had the right to insist on a trial, he had decided to plead guilty because Mabee had told him that he had no possibility of winning and that he would receive a sentence of sixty years. Petitioner also testified that to the best of his knowledge, Mabee had never investigated his case.

Petitioner testified that when he entered his guilty plea, he understood everything that happened and he understood the judge's questions. Petitioner testified that he lied to the judge when he answered the questions because he felt that Mabee was providing inadequate representation and would continue to provide inadequate representation if the case went to trial.

On cross-examination, Petitioner admitted that he had pled guilty to other offenses in the past. Petitioner also admitted that before he pled guilty, he had refused a previous plea offer and insisted that the case be set for trial and Mabee had complied with his request.

When the post-conviction court questioned Petitioner about why he had pled guilty, Petitioner stated:

> I just wanted to cop out for the eight and just say forget it because I was tired of going back and forwards and staying at the county jail, so I just wanted to get me some air. I just went and pled guilty for it. Nobody pressured me into it. I just pleaded guilty just to get out [of] the county jail.

When the post-conviction court asked Petitioner whether he had "told [the trial court] just a bunch of lies so you could get out of the county jail," Petitioner stated that that was what he had done.

At the conclusion of the hearing, the post-conviction court found that there was absolutely no evidence to substantiate Petitioner's claim that he received ineffective assistance of counsel. In addition, the court found that Petitioner's guilty pleas were entered voluntarily, knowingly, and intelligently. Finally, the court found that Petitioner's testimony as to Mabee's performance was simply not credible.

## II. ASSISTANCE OF COUNSEL

Petitioner contends that the post-conviction court erred when it determined that Petitioner did not receive ineffective assistance of counsel. We disagree.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). "In the case of a guilty plea, to satisfy the requirement of prejudice, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." Bentley v. State, 938 S.W.2d 706, 710–11 (Tenn. Crim. App. 1996). "Moreover, on appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "The burden is on the petitioner to show that the evidence preponderated against those findings." Id. In addition, "questions concerning the credibility of witnesses and weight and value to be given their testimony are for resolution by the post-conviction court." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

Petitioner contends that he received ineffective assistance of counsel because Mabee failed to investigate this case by interviewing witnesses and

because Mabee failed to show the discovery materials to Petitioner when he asked to see them. The post-conviction court found that Petitioner had failed to produce any evidence that supported these claims. The record supports the post-conviction court's findings. Indeed, Mabee testified that he had filed discovery requests in this case and he had also talked to the prosecutor to determine what the proof would be and who would testify at trial. Mabee testified that although he could not specifically recall whether he or his investigators had interviewed witnesses in this case, his standard procedure in cases where a witness was equivocal about an identification of the defendant would involve an attempt to locate and interview the witness. Further, Mabee expressly denied that he had ever refused to honor Petitioner's request to see items obtained during discovery. Finally, when the trial court asked Petitioner during the guilty plea hearing whether he was satisfied with Mabee's performance, Petitioner stated that he was.

The Petitioner has failed to support his allegations that he received ineffective assistance of counsel with any evidence other than his own self-serving testimony which the post-conviction court found was simply not credible. Thus, Petitioner has failed to show that his guilty pleas were the result of receiving ineffective assistance of counsel. This issue has no merit.

### III. VOLUNTARINESS OF THE GUILTY PLEAS

Petitioner contends that the post-conviction court erred when it determined that his guilty pleas were entered voluntarily, knowingly, and intelligently. We disagree.

In order to satisfy constitutional standards, a guilty plea must be entered knowingly, voluntarily and intelligently. Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); Johnson v. State, 834 S.W.2d 922, 923 (Tenn. 1992). A defendant enters a knowing and voluntary plea when he or she understands the rights and circumstances involved and nevertheless chooses to waive or relinquish those rights. State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). The relinquishment of these rights will not be presumed from a silent record. Bates v. State, 973 S.W.2d 615, 624 (Tenn. Crim. App. 1997). However, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Powers v. State, 942 S.W.2d 551, 556 (Tenn. Crim. App. 1996) (citation and internal quotations omitted). In determining whether a petitioner's guilty plea was knowing and voluntary, this Court must look at the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). In so doing, this Court can review any relevant evidence in the record, including the post-conviction proceedings. Id.

We conclude that under the totality of the circumstances, the post-conviction court did not err when it found that Petitioner's guilty pleas were entered voluntarily, knowingly, and intelligently. As we have previously discussed, Petitioner was represented by competent counsel who explained the consequences of pleading guilty to Petitioner. In addition, when the trial court informed Petitioner that if he pled guilty the total sentence could be anywhere between eight and thirty years, Petitioner stated that he understood. Further, the record indicates that the trial court advised Petitioner that he had the right to plead not guilty and insist on a jury trial, that he had the right to be represented

at trial, that he had the right to confront the witnesses against him, that he had the right to subpoena witnesses on his behalf, that he had a privilege against self-incrimination, that he had the right to appeal if he was convicted at trial, that he had the right to counsel on appeal, and that his convictions in this case could be used to enhance punishment in subsequent cases. After the trial court explained these rights, Petitioner stated that he understood them. Petitioner then indicated that he had not been forced, coerced, or threatened into pleading guilty and the decision to plead guilty was his own. During the post-conviction hearing, Petitioner testified that when he entered his guilty plea, he understood everything that happened and he understood the judge's questions. Finally, the record indicates that when the post-conviction court questioned Petitioner about why he had pled guilty, Petitioner testified that "Nobody pressured me into it. I just pleaded guilty just to get out [of] the county jail." In short, the record fully supports the finding of the post-conviction court that Petitioner was well advised, was aware of his constitutional rights, and that he entered his guilty pleas voluntarily, knowingly, and intelligently. This issue has no merit.

## IV. BIAS AGAINST PETITIONER

Petitioner claims that the allegation that the post-conviction judge was biased against him and for this reason dismissed his petition is proven by the following events he claims occurred during the post-conviction hearing: the judge told Mabee that he did not have to answer a question about whether he wanted Petitioner to receive the maximum sentence so that he could collect a payment from the Victim's Compensation Fund, the judge told Mabee that he did not have to answer a question about whether he would be paid more if Petitioner pled

guilty than he would be paid if the case went to trial, the judge refused to grant a continuance when Petitioner's counsel reported that Mabee had refused to turn over the file on Petitioner's case, and the judge refused to answer the questions of Petitioner's counsel about why the judge was interfering with his questioning of Mabee.

We have reviewed the transcript of Petitioner's post-conviction hearing, and the transcript fails to reflect that these events ever happened. Quite simply, there is no indication in the record that the post-conviction judge had any subjective or objective bias or prejudice against Petitioner. On the contrary, the record indicates that rather than dismissing the petition for post-conviction relief because he was biased against Petitioner, the post-conviction judge dismissed the petition because it had no merit whatsoever. This issue has no merit.

Accordingly, the judgment of the post-conviction court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
JOE G. RILEY, JUDGE

_____
NORMA MCGEE OGLE, JUDGE

-10-