Kenneth A. BENTLEY, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 18, 1996.

Ardena J. Garth, District Public Defender, Donna Robinson Miller, Asst. District Public Defender, Chattanooga, for Appellant.

Charles W. Burson, Attorney General & Reporter, Darian B. Taylor, Asst. Attorney General, Nashville, Gary D. Gerbitz, District Attorney General, Leland Davis, Asst. District Attorney General, Chattanooga, for Appellee.

## OPINION

PEAY, Judge.

The petitioner pled guilty on June 15, 1994, to escape from a penal institution in violation of T.C.A. § 39–16–605 (1991). At the time of the alleged escape offense, the defendant was serving a ten year Community Corrections sentence for previous drug offenses. The trial court sentenced him to one year in prison, with the sentence to run consecutively to the sentences for which the defendant was on Community Corrections. The petitioner filed a petition for post-conviction relief on October 14, 1994, and amended it with the assistance of counsel on January 24, 1995, alleging that he received ineffective assistance of counsel and that the trial court erred in accepting his guilty plea because there was no factual basis to support his conviction for escape. The trial court dismissed the petition on May 3, 1995, finding that the petitioner had escaped from the custody of a Hamilton County Community Corrections Program employee who was carrying out an order of the Hamilton County Criminal Court. After a review of the record and the arguments in the present case, we reverse the judgment of the trial court and vacate the petitioner's conviction for escape from a penal institution.

The pertinent facts are not in serious dispute. Prior to the petitioner's alleged escape offense, he had been convicted on three counts of selling cocaine and had received a ten year sentence to be served on Community Corrections. As a condition of participating in the Community Corrections Program, the petitioner submitted to random drug testing. On February 17, 1994, the petitioner failed one of the random drug tests. In response to the positive drug test, the Community Corrections Program informed the Hamilton County Criminal Court of the petitioner's failure to comply with the program and requested a letter of revocation. Without a hearing, the Hamilton County Criminal Court ordered the removal of the petitioner from the Community Corrections Program on February 25, 1994.

On March 2, 1994, David Gann, the petitioner's supervisor for the Community Corrections Program, met with the petitioner in the Community Corrections office. Gann informed him of the order removing him from the program. Gann then removed the electronic bracelet from the petitioner's ankle and told him that he would have to return to jail immediately. The petitioner stood up and told Gann that he could not return to jail at that time because he "had business to take care of." According to Gann, the petitioner adopted a defensive position and Gann, knowing of the petitioner's former prowess as a prize fighter, allowed the petitioner to leave the office. Upon the petitioner's departure from the office, Gann proceeded to the clerk's office to procure an arrest warrant for escape.

The petitioner later contacted an attorney and turned himself in to the authorities. Although the petitioner's attorney initially believed that there was a question about whether the petitioner had violated the escape statute, he eventually decided that the petitioner's conduct did constitute escape. The petitioner informed his attorney that he wanted to resolve the situation expediently, that he did not want a trial, and that he wanted to "go ahead and get this done." As a result, the petitioner's attorney entered into plea negotiations, and a plea agreement was soon reached whereby the petitioner pled guilty to escape from a penal institution and received a one year sentence.

In his petition for post-conviction relief, the petitioner complains that the trial court erred in accepting his guilty plea because

there was no factual basis to support his plea, as is required under Tenn.R.Crim.P. 11. *See also, State v. Mackey,* 553 S.W.2d 337 (Tenn.1977). Furthermore, the petitioner contends that he received ineffective assistance of counsel because his attorney advised him to plead guilty to escape when his conduct did not meet the statutory definition of the offense. With respect to both claims, then, the focal point of the petitioner's argument is that his actions on March 2, 1994, did not constitute the criminal offense of escape from a penal institution as defined in T.C.A. § 39–16–605 (1991). More specifically, the petitioner argues that because he was a participant in the Community Corrections Program, his conduct could not possibly have been an escape *from a penal institution,* as defined in the escape statute. On the contrary, he maintains that his actions could only be interpreted as a possible violation of the conditions of his Community Corrections sentence.

The State, on the other hand, argues that the petitioner was actually no longer a participant in the Community Corrections Program, but rather was in the custody of an incarcerating institution when he departed from the Community Corrections office on March 2, 1994. In support of this argument, the State relies heavily upon two court orders, one assigning the petitioner to Community Corrections and one allegedly revoking him from Community Corrections. In December of 1993, after the petitioner's conviction on three counts of selling cocaine, the trial court sentenced the petitioner to Community Corrections through the following order:

> It now appearing to the Court ... that the defendant is a suitable candidate for assignment to the Hamilton County Community Corrections Program, it is,
>
> ORDERED that the defendant is hereby assigned to the Hamilton County Community Corrections Program. It is a further condition of said assignment that the defendant continue to comply with the Court's Guidelines and the Regulations of said Program.... The defendant will be released by the Workhouse authorities (or Sheriff, or Department of Corrections, if appropriate,) to the Hamilton County Community Corrections Program staff.
>
> Should the defendant subsequently violate the Court's Guidelines or Regulations, *the Hamilton County Community Corrections Program staff is authorized to administratively re-transfer the defendant to the incarcerating institution,* and, in that event, it is,
>
> ORDERED *that the incarcerating institution accept the defendant as a prisoner* to serve the sentence as originally provided. *Should the defendant be aggrieved thereby, he may file an appropriate motion with the Court within five (5) days of the transfer, but the pendency of the motion shall not affect his physical transfer to the incarcerating institution.* (emphasis added).

The second order on which the State relies was entered on February 25, 1994 in response to the letter sent by the Hamilton County Community Corrections Program stating that the petitioner had failed a random drug test. This order allegedly removed the petitioner from the Community Corrections Program. It reads as follows:

> The ... defendant has violated the conditions of the Community Corrections Program, and it is therefore,
>
> ORDERED that he be removed from the program.
>
> The Clerk is ordered to issue a workhouse capias for the arrest of the defendant.

The State contends that the December 1993 order expressly gave the Community Corrections Program staff, in this case David Gann, the authority to transfer the petitioner back to an incarcerating institution in the event that he violated the terms of the Community Corrections Program. Furthermore, the February 1994 order states that the petitioner violated the terms of the Program. As a result, the State argues that when Gann removed the petitioner's monitoring bracelet and informed him that he had to return to jail, the petitioner was no longer a participant with the Community Corrections Program, but rather was in the custody of an incarcerating institution. Accordingly, the petitioner's departure from the Community

Corrections office did meet the statutory definition of escape from a penal institution.

On May 3, 1995, the trial court conducted an evidentiary hearing on the petition for post-conviction relief. After hearing argument from counsel and testimony from both David Gann and Michael Caputo, the petitioner's attorney on the guilty plea to escape, the trial court found as follows:

Proof show [sic] that petitioner escaped from the custody of David Gann, an employee of the Hamilton County Community Corrections Program, who was carrying out an order of the Honorable Steve Bevil, Criminal Court Judge, who had ordered petitioner taken into custody.

Upon the denial of his petition for post-conviction relief, the petitioner appealed to this Court.

■■ We agree with the petitioner that his actions on March 2, 1994 did not constitute the criminal offense of escape from a penal institution. For purposes of the escape statute, T.C.A. § 39–16–601 defines "penal institution" as "any institution *used to house or detain* a person: (A) [c]onvicted of a crime; or (B) [w]ho is in direct or indirect custody after a lawful arrest." T.C.A. § 39–16–601(4) (1991) (emphasis added). Community Corrections, however, is an alternative to incarceration and is noncustodial in nature. *See* T.C.A. § 40–36–102(5) (1990); T.C.A. § 40–36–104(4) (1990); T.C.A. § 40–36–106(e)(1) (1990). Community Corrections Programs "involve close supervision but ... do not involve housing of the offender in a jail, workhouse or community facility." T.C.A. § 40–36–302(a)(1) (1990). From our review of the plain language of the statutory provisions at issue, we conclude that Community Corrections does not qualify as a "penal institution" for the purposes of the escape statute. Moreover, we find no evidence that the legislature, in enacting the Community Corrections Act of 1985 and the Criminal Sentencing Reform Act of 1989, intended to include a violation of the conditions of a Community Corrections sentence in the criminal offense of escape from a penal institution. Accordingly, from a review of the entire record, we find that on March 2, 1994, the petitioner was serving a Community Cor-

rections sentence and his departure from the Community Corrections office did not meet the statutory requirements of the criminal offense of escape from a penal institution.

■■ We turn now to the petitioner's contention that he received ineffective assistance of counsel. "In post-conviction relief proceedings the petitioner has the burden of proving the allegations in his [or her] petition by a preponderance of the evidence." *McBee v. State,* 655 S.W.2d 191, 195 (Tenn. Crim.App.1983). Furthermore, the factual findings of the trial court in hearings "are conclusive on appeal unless the evidence preponderates against the judgment." *State v. Buford,* 666 S.W.2d 473, 475 (Tenn.Crim. App.1983).

■■ This Court should not second-guess trial counsel's tactical and strategic choices unless those choices were uninformed because of inadequate preparation, *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn.1982), and counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State,* 599 S.W.2d 276, 280 (Tenn.Crim.App.1980).

In reviewing the petitioner's Sixth Amendment claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective counsel, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that this performance prejudiced the defense. There must be a reasonable probability that but for counsel's error the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 692, 694, 104 S.Ct. 2052, 2064–65, 2067, 2068, 80 L.Ed.2d 674 (1984); *Best v. State,* 708 S.W.2d 421, 422 (Tenn.Crim.App.1985).

■■ In the case of a guilty plea, to satisfy the requirement of prejudice, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on

going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985); *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn.Crim.App.1991).

█ The record in the present case reveals that the petitioner, with the assistance of counsel, pled guilty to an offense which he did not actually commit. More importantly, the record indicates that the primary motivation for entering the guilty plea arose from the petitioner's, and his counsel's, misunderstanding of the law as it applied to the facts of the case at bar. Petitioner's counsel initially had doubts regarding whether the petitioner had committed the offense of escape from a penal institution. After speaking with the petitioner's Community Corrections supervisor, however, petitioner's counsel "felt like there had been an escape from custody." Thus, after initially believing that there was an issue as to whether the petitioner's conduct satisfied the statutory elements of escape, petitioner's counsel "decided that it was not a valid defense" and advised the petitioner regarding his professional opinion, resulting in the petitioner's desire to resolve the matter quickly through a guilty plea.

The principal shortcoming on the part of petitioner's counsel was his focus on the issue of whether the petitioner was "in custody" for the purposes of the escape statute, to the exclusion of any analysis of whether the petitioner escaped "from a penal institution." However petitioner's counsel resolved the "custody" issue, it is clear from the plain language of the escape statute that there was a serious question as to whether Community Corrections qualified as a "penal institution." With an adequate review of the escape statute, petitioner's counsel should have pursued this issue. Furthermore, upon recognition of this significant issue, counsel could have at least sought to certify a question of law upon entry of the guilty plea. This course of action would have allowed the petitioner to maintain the benefit of the minimum sentence recommendation associated with his guilty plea while preserving his ability to question the validity of his conviction under the escape statute. From this record, we can only conclude that counsel's misunderstanding of the law as it applied to the facts

of the petitioner's case resulted from the lack of reasonable review of the applicable statutory provisions. We therefore find that in allowing the petitioner to plead guilty to an offense which he clearly did not commit because of an uninformed analysis of how the law applied to the facts of the case, petitioner's counsel's performance was constitutionally deficient.

We recognize that there is no proof in the record of the post-conviction proceeding to support the second prong of *Strickland*, that counsel's performance prejudiced the petitioner. It appears from the record that argument from counsel regarding the interpretation of the escape statute occupied the vast majority of time at the post-conviction hearing. Amidst the debate concerning statutory interpretation, the petitioner offered no evidence that, but for counsel's error at the guilty plea proceeding, he would have insisted on going to trial. We find, however, that it was plain error to convict the petitioner of escape from a penal institution when the admitted, unchallenged facts clearly do not constitute that criminal offense. The record convincingly establishes that the petitioner is entitled to relief and, thus, our consideration of counsel's error at the guilty plea proceeding is necessary to do substantial justice. Fundamental fairness requires that the petitioner's conviction for escape from a penal institution be set aside and dismissed.

█ Having resolved this case upon the issue of ineffective assistance of counsel, we find it unnecessary to delve into the intricacies of the petitioner's argument that the trial court erred in entering judgment on the petitioner's guilty plea without a factual basis to support it, in violation of Tenn.R.Crim.P. 11(f) and *State v. Mackey*. We note, however, that given the purposes of the *Mackey* requirements, the petitioner's claim that the trial court erred by accepting his plea in the absence of a factual basis is actually a challenge to the voluntariness of his plea. Yet as our Supreme Court has often stated, a challenge to the voluntariness of a guilty plea based on violation of *Mackey* precepts which exceed the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), is not a constitutional

claim and is not, therefore, properly raised in a post-conviction petition. *See, e.g., State v. Frazier,* 784 S.W.2d 927, 928 (Tenn.1990); *State v. Prince,* 781 S.W.2d 846, 853 (Tenn. 1989). The *Boykin* court focused on the defendant's understanding of the right to trial by jury, the right against self-incrimination, and the right to confrontation, holding that it could not presume a waiver of those three constitutional rights from a silent record. *See Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712. It appears, then, that the "factual basis" requirement from *Mackey* has supervisory rather than constitutional roots, and the petitioner's claim that the trial court erred by entering judgment on his guilty plea without a proper factual basis is therefore not cognizable in a post-conviction proceeding.

Our resolution of the petitioner's ineffective assistance of counsel issue in his favor does not end our consideration of all matters brought forth in the present case. In analyzing the State's contention that the petitioner was no longer a participant with the Community Corrections Program at the time of his departure from Gann's office on March 2, 1994, we are implicitly faced with the larger issue of whether the procedures followed in Hamilton County for the revocation of a Community Corrections sentence comport with constitutional due process requirements. Based on our review of the record in the case at bar, we are convinced that Hamilton County's revocation procedures violate the due process rights of those individuals whose Community Corrections sentences are revoked.

As we explained above, the petitioner was originally assigned to the Hamilton County Community Corrections Program by order of the trial court upon his convictions for three counts of selling cocaine. The assigning order, entered in December of 1993, purported to authorize the Community Corrections Program staff to "administratively re-transfer the defendant to the incarcerating institution" in the event that he violated any of the conditions of his Community Corrections sentence. It also ordered the incarcerating institution to accept the petitioner should he be administratively re-transferred by the Community Corrections Program staff. The assigning order provided further that the petitioner could challenge the transfer by filing an appropriate motion with the trial court, but the challenge would not affect his physical transfer to the incarcerating institution.

The removal order, entered by the trial court in response to the letter from the Community Corrections Program staff informing the trial court that the petitioner had failed a drug test, stated simply that the petitioner had violated the conditions of the program and ordered his removal from the program. The order did not specify which condition the petitioner had violated and did not contain any findings other than the conclusory statement that the petitioner had violated the conditions of the program. No hearing was conducted at any time prior to the entry of the removal order to determine the circumstances surrounding the petitioner's alleged violation of the conditions of the program. Nor was any hearing conducted to determine if revocation was the proper response to the alleged violation. The order called for the issuance of a workhouse capias for the arrest of the defendant, but no capias was ever issued.

During the hearing on the post-conviction petition, the trial court explained the Community Corrections procedures exemplified by the above orders.

> Let's see. Mr. Heinsman, we might for the record state that the Community Corrections Program in Hamilton County or in the Eleventh Judicial District differs from nearly every program in the state. In most areas of the state, somebody is placed on a suspended sentence and assigned to Community Corrections.
>
> Under our program, which has not been challenged, an individual does not receive a suspended sentence. He is just—he's in custody and he receives jail credit the same, and our orders provide that the Community Corrections officers take him out of jail and if he doesn't obey their rules, put him back in jail.

The trial court took judicial notice of the manner in which the Hamilton County Community Corrections Program operates and

found that the appropriate procedures were properly followed in the petitioner's case.

The starting point of our analysis of the Hamilton County Community Corrections Program procedures is, of course, the Community Corrections Act of 1985. With regard to the revocation of a Community Corrections sentence, the Act provides as follows:

The *court shall* also *possess* the power to revoke the sentence imposed at any time due to the conduct of the defendant ..., and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

T.C.A. § 40–36–106(e)(3) (1990) (emphasis added). The Act provides that the power to revoke a Community Corrections sentence rests within the sound discretion of the trial court. The language of the Act is mandatory and exclusive.

Hamilton County revocation procedures, however, seemingly place extensive authority with the Community Corrections Program staff. From the record before this Court, it appears that the trial court's removal order is merely a perfunctory step in the process of revocation determined and carried out almost exclusively by the Community Corrections Program staff. For instance, in the present case the Community Corrections Program staff determined that the petitioner had violated the conditions of his sentence. The Program staff then sent a letter to the trial court requesting the petitioner's removal from the program, which the trial court granted in a conclusory, summary fashion. The Program staff, acting in accordance with Hamilton County procedures, took it upon themselves to "administratively re-transfer" the petitioner to an incarcerating institution.

At no time during the process of revoking the petitioner's Community Corrections sentence was the petitioner granted a hearing or any similar opportunity to know, question or challenge the circumstances surrounding his alleged violation of the conditions of his Community Corrections sentence. Moreover, at no time during the revocation process was the petitioner given the opportunity to present evidence on his own behalf, to confront the witnesses testifying against him, or to cross-examine those witnesses.

The procedures outlined above do not comport with the procedures set forth in the Community Corrections Act of 1985. In the first place, the determination as to whether an individual has violated the conditions of a Community Corrections sentence rests solely with the trial court. Furthermore, the decision as to the appropriate action to take regarding modification of a Community Corrections sentence in the wake of a violation also rests solely with the trial court. It goes without saying that different violations of the conditions of a Community Corrections sentence allow for different remedies. Depending upon the circumstances of a case, an individual may be returned to an incarcerating institution, or the conditions of the sentence may be modified, or no changes whatsoever may be made to the original sentence. Whatever the appropriate remedy to a violation may be, the decision as to whether and how to modify a Community Corrections sentence lies with the trial court after hearing all of the relevant evidence in the case. The Hamilton County procedures vest this discretion with the Community Corrections Program staff, as evidenced by the sequence of events which transpired in the case at bar. From a review of the record before us, we find that the Hamilton County procedures improperly transfer functions reserved to the trial court to the Community Corrections Program staff, in direct contravention of the revocation procedures outlined in T.C.A. § 40–36–106(e)(3).

Of equal concern is the lack of a hearing prior to the revocation of the petitioner's Community Corrections sentence and his transfer back to an incarcerating institution. From the orders and explanation of procedures given by the trial court in the present case, the revocation process followed in Hamilton County simply does not provide for a hearing to determine if a violation of the conditions of the Community Corrections

sentence occurred, nor does it provide for a hearing to determine what modification of the Community Corrections sentence is appropriate given the finding of a violation of the conditions of the sentence. Instead, Hamilton County procedures allow an individual five days to file a motion contesting the revocation after the transfer to an incarcerating institution has already begun, thereby shifting the burden to the prisoner to prove that he or she is entitled to remain a participant in the Community Corrections Program. We believe that, by dispensing with proper notice and a hearing both to determine if a violation of the conditions of a Community Corrections sentence occurred and to decide an appropriate remedy in response to a violation, the revocation procedures followed in Hamilton County violate the due process rights of those individuals participating in the Community Corrections Program whose sentences are revoked. *Cf. Gagnon v. Scarpelli,* 411 U.S. 778, 781–782, 93 S.Ct. 1756, 1759–1760, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 484–489, 92 S.Ct. 2593, 2602–2604, 33 L.Ed.2d 484 (1972).

■ In the recent case of *State v. Harkins,* 811 S.W.2d 79 (Tenn.1991), our Supreme Court held that, given the similar nature of a Community Corrections sentence and probation, the same principles applicable in the revocation of probation should apply in the revocation of a Community Corrections sentence. *See State v. Harkins,* 811 S.W.2d 79, 83 (Tenn.1991). More specifically, the Harkins court held that the same standard of review applied in cases of probation revocation, namely abuse of discretion, applies to cases of Community Corrections revocation. *See Harkins,* 811 S.W.2d at 82. We agree that Community Corrections and probation, as a practical matter, closely resemble each other. *See Harkins,* 811 S.W.2d at 82. In fact, we find them sufficiently similar in nature to justify applying similar revocation procedures to both types of sentences. *Cf. Harkins,* 811 S.W.2d at 82–83. We therefore conclude that the procedures used in the revocation of a Community Corrections sen-

tence should be no less stringent than those used in the revocation of probation.

The procedures for the revocation of probation stem from the U.S. Supreme Court case of *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and were codified by the Criminal Sentencing Reform Act of 1989. T.C.A. § 40–35–311 provides for notice and a hearing at the earliest practicable time after the arrest of the defendant for violation of the conditions of probation to determine if there has indeed been a violation. *See* T.C.A. § 40–35–311(b) (1990). The defendant must be present at the hearing, is entitled to be represented by counsel, and has the right to introduce testimony is his or her own behalf. *See* T.C.A. § 40–35–311(b) (1990). If the trial court finds by a preponderance of the evidence that a violation occurred, he or she may revoke probation, but the defendant has the right to appeal the judgment of the trial court. *See* T.C.A. § 40–35–311(d) (1990). These general procedures exist to insure that the loss of liberty entailed by the revocation of probation is accomplished with proper regard for due process. *See Gagnon v. Scarpelli,* 411 U.S. at 781–782, 93 S.Ct. at 1759–1760; *Practy v. State,* 525 S.W.2d 677, 682 (Tenn.Crim.App. 1974). We conclude that the use of similar procedures in Community Corrections cases will insure that the loss of liberty entailed by the revocation of a Community Corrections sentence is also accomplished with proper regard for due process.

For the reasons set out in the foregoing discussion, we find that the petitioner received ineffective assistance of counsel at the guilty plea proceeding. It is the opinion of this Court that this violation of the petitioner's Sixth Amendment right was caused in some measure by the constitutionally inadequate procedures followed in Hamilton County for the revocation of a Community Corrections sentence, principally the lack of proper notice and a hearing prior to the revocation to determine whether a violation of the conditions of the petitioner's sentence actually occurred and what modification of the sentence best serves the purposes of criminal sentencing.

From a review of the entire record, we conclude that the evidence preponderates against the trial court's decision to deny the petition for post-conviction relief. Accordingly, we reverse the judgment of the trial court and hereby vacate the petitioner's conviction for escape from a penal institution and dismiss that charge.[1]

SMITH, J., and JOHN K. BYERS, Senior Judge, concur.

---

[1] We discussed the constitutional soundness of the Hamilton County Community Corrections revocation procedures in order to analyze the State's argument that the petitioner had escaped from a penal institution rather than violated a condition of his Community Corrections sentence. Since the Community Corrections revocation procedure was not an issue specifically raised by the petitioner in his pleadings, we make no ruling on the revocation of the petitioner's Community Corrections sentence.