IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2001 Session

## STATE OF TENNESSEE v. DAVID M. BLACK

**Appeal from the Circuit Court for Sumner County**
**No. 20329-C     Clara W. Byrd, Judge**

---

**No. M2000-02935-COA-R3-CV - Filed June 25, 2002**

---

Petitioner sought a second restoration of citizenship rights after his sentence for a felony conviction expired. The State opposed the motion primarily on the basis of Mr. Black's pre-conviction conduct and the fact he had previously had his rights restored. The trial court denied restoration of the right to hold public office but restored the right to vote. We affirm the restoration of the right to vote and vacate the order denying the right to seek and hold public office.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Vacated in Part, and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and J. S. DANIEL, SP. J., joined.

Darrell L. Scarlett, Murfreesboro, Tennessee, for the appellant, David M. Black.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; for the appellee, State of Tennessee.

### OPINION

I.  Facts

In 1983, Mr. Black was convicted on two counts of selling a controlled substance. As a result of his felony convictions, Mr. Black was rendered infamous and lost his citizenship rights.

In 1993, Mr. Black ran for and was elected as a city councilman in Gallatin, Tennessee; however, in his qualifying papers, he stated that he had never been convicted of a felony. As a result

of this statement, Mr. Black was never certified as the winner.[1] On December 10, 1993, Mr. Black's rights of citizenship were fully restored. Subsequently, he ran for and was elected to the office of councilman.

While serving as a councilman, Mr. Black also served as a professional bondsman in the Sumner County Criminal Courts. In March of 1997, Mr. Black was charged by indictment with forgery, a class "E" felony, in violation of Tenn. Code Ann. § 39-14-114, and making a false statement in obtaining a surety bond, a class "A" misdemeanor, in violation of Tenn. Code Ann. § 39-14-148. The jury found Mr. Black guilty on both charges on October 7, 1997. He was sentenced to 11 months, 29 days for his conviction for making a false statement, all of which was to be served on probation. As a result of the forgery conviction, Mr. Black received two (2) years, but was placed on a community-based alternative in lieu of the penitentiary. The felony forgery conviction rendered Mr. Black infamous for the second time, and he again lost citizenship rights, to the extent mandated by statute.

After his maximum sentence expired, Mr. Black petitioned the Sumner County Circuit Court for the restoration of his citizenship rights. The petition was granted without a hearing. However, the District Attorney General ("State") filed a Motion to Set Aside the Order because he was not notified by the trial court of the petition as mandated by Tenn. Code Ann. § 40-29-105(c)(4)(A) and, therefore, could not oppose it. The trial court granted the Motion to Set Aside the Order and ordered a hearing.

The petition was heard by a special judge, appointed via interchange. At the hearing Mr. Black presented character testimony from Mr. Brinkley, a former school teacher, who testified that Mr. Black had been an asset to the community since his conviction. Mr. Black testified on his own behalf and additionally called Beth Robertson, assistant coordinator for the Tennessee Division of Elections. Ms. Robertson testified regarding a printout from the Division of Elections which listed all felons in Tennessee who had twice been granted a restoration of citizenship rights. Upon cross-examination, it was established that the list did not reflect that rights had been restored by a court, after a change in the law in 1996, to any convicted felon for a second time. The State relied on the testimony of Special Agent Richard Stout of the Tennessee Bureau of Investigation ("TBI"), as well as various exhibits related to the prior felony convictions, and the previously filed petition for restoration of rights. The testimony related to circumstances surrounding the offense for which Mr. Black was convicted in 1997.

At the conclusion of the hearing, the judge, after noting the statutory presumption in favor of restoration, found that Mr. Black had committed a fraud upon the voters of Tennessee when he asserted in qualifying papers that he had never been convicted of a felony and that he exhibited an unwillingness to take responsibility for his actions. The court found, by a preponderance of the

---

[1]At the hearing, a chancery court decision deciding Mr. Black's suit to be allowed to take his seat on the council was introduced, but it is not included in the record on appeal. In testifying about that court decision, Mr. Black agreed it had upheld his disqualification from office.

evidence, that the presumption in favor of Mr. Black's petition had been overcome, and that the State had established good cause to deny the petition to restore Mr. Black's citizenship rights. Thereafter, Mr. Black moved for a partial restoration of his citizenship rights by granting him the right to vote. Over the objection of the State, the court granted the motion and restored Mr. Black's right to vote, but expressly denied him restoration of the right to hold public office.

Mr. Black now appeals arguing that the court abused its discretion in denying him the ability to ever qualify to run for or hold any elected public office. He argues that: (1) the trial court erred because the evidence provided by the state did not prove, by a preponderance of the evidence, that he was not eligible for restoration of citizenship; and (2) the trial court erred by granting a partial restoration of rights because there is no statutory distinction between the right to vote and the right to hold public office and, therefore, no statutory authority for a partial restoration of rights.[2]

The State agrees with Mr. Black in that there is no statutory authority for a partial restoration of rights, but contends that the record supports the court's basic finding that the evidence preponderated against a restoration of any citizenship rights at all.

## II. Civil Disability Statutes

Our Supreme Court has discussed the nature of the civil disabilities that Tennessee statutes impose upon persons convicted of felonies:

> Virtually every jurisdiction subjects a convicted defendant not only to criminal punishment but also sanctions that restrict civil and proprietary rights. Walter M. Grant et al., *Special Project, The Collateral Consequences of a Criminal Conviction*, 23 VAND. L. REV. 929 (1970) (hereinafter 'Special Project'). Such restrictions, or civil disabilities, date back to ancient Greece and Rome, when a criminal conviction rendered one 'infamous,' and resulted in the loss of the right to vote, hold office, make speeches or assemble. The sanctions were viewed as retributive and deterrence measures imposed against those who committed crimes because they entailed the loss of rights most cherished by society. Civil disabilities were also imposed in early English common law in the form of 'attainder.' A person convicted of treason or a felony, i.e., attained, was not only subjected to criminal punishment but also the loss of property, voting, and other civil rights. Walter M. Grant et al., *Special Project, the Collateral Consequences of a Criminal Conviction*, 23 VAND. L. REV. 929 at 941-944 (1970).

> In this country civil disabilities continue to play a significant role in the criminal justice system and generally fall into one of two categories: civil death statutes and specific disability statutes.

_____

[2]Tenn. Code Ann. § 40-29-105(c)(1) speaks of "restoration of full rights of citizenship."

. . . .

> [S]pecific disability statutes designate a particular civil disability that occurs upon the conviction and remains in effect throughout the defendant's life unless restored by a specific statutory procedure. Walter M. Grant et al., *Special Project, The Collateral Consequences of a Criminal Conviction*, 23 VAND. L. REV. 929 at 951 (1970). A civil disability pursuant to such a statute may include the loss of the right to vote, hold office, serve as a juror, possess firearms, and the denial of professional or occupational licensing. *Special Project, The Collateral Consequences of a Criminal Conviction*, 23 VAND. L. REV. 929 at 952 (1970).
>
> Like the vast majority of states, Tennessee does not have a civil death statute but rather a series of specific disability statutes. These include the loss of the right to vote, *see* Tenn. Code Ann. § 40-20-112; the loss of the right to hold public office, *see* Tenn. Code Ann. § 40-20-114; and the loss of the right to serve as a fiduciary, *see* Tenn. Code Ann. § 40-20-115. Persons convicted of certain violent criminal offenses are prohibited from carrying handguns. Tenn. Code Ann. § 39-17-1307(b). The loss of these specific rights of citizenship may be restored pursuant to a statutory proceeding for "restoration of citizenship" set forth in Tenn. Code Ann. §§ 40-29-101-105. *See also* 21A AM. JR. 2D CRIMINAL LAW, § 1032-1033 (1981 & Supp. 1997).

*Cole v. Campbell*, 968 S.W.2d 274, 276-77 (Tenn. 1998).

In *Cole*, the Court held that a convicted felon was not precluded from filing a petition as a "citizen" under the Public Records Act because no specific statutory disability existed prohibiting such filing. *Id*. at 277. The Court further noted that, "the limits of punishment [for commission of a crime] are set by the Legislature and no punishment may be imposed without statutory authority." *Id*.

In the case before us, Mr. Black sought restoration of his citizenship rights which were revoked as a result of his 1997 conviction for forgery, a felony. Revocation of the rights at issue are governed by two statutes: Tenn. Code Ann. §§ 40-20-112 & -114. Tenn. Code Ann. § 40-20-112 provides:

> Upon conviction for any felony, it shall be the judgment of the court that the defendant be infamous and be immediately disqualified from exercising the right of suffrage. No person so convicted shall be disqualified to testify in any action, civil or criminal, by reason of having been convicted of any felony, and the fact of conviction for any felony may only be used as a reflection upon the person's credibility as a witness.

-4-

In addition to the right to vote lost pursuant to this statute, the other civil disability relevant herein is that found in Tenn. Code Ann. § 40-20-114, which states:

> Every person convicted of a felony or an infamous crime **and sentenced to the penitentiary**, either on the state or federal level, is disqualified from qualifying for, seeking or holding any office under the authority of this state unless and until such person's citizenship rights have been restored by a court of competent jurisdiction.

(emphasis added).

### III. Right to Seek and Hold Public Office

The trial court denied Mr. Black's petition to restore his right to seek or hold public office. However, under the specific language of Tenn. Code Ann. § 40-20-114, a convicted felon is disqualified from holding public office only if he or she is "sentenced to the penitentiary." If Mr. Black was not sentenced to the penitentiary, he never forfeited the right to seek and hold public office, and no petition or court order would be required to "restore" a right never taken away.

It is undisputed that Mr. Black did not serve any part of his sentence in the penitentiary, instead performing community service. The judgment form included in the record reflects that Mr. Black was sentenced on October 7, 1997, to two years at 30% for his felony conviction. After the phrase "sentenced to" two blocks were checked: one for TDOC and one for community-based alternative, after which "MCHRA"[3] was handwritten in the blank marked "specify."

A sentence to community-based alternative sentencing is not a sentence to the penitentiary. Community-based alternatives to incarceration are defined as "services and programs provided in local jurisdictions for eligible offenders **in lieu of incarceration in state penal institutions** or local jails and workhouses." Tenn. Code Ann. § 40-36-102(5) (emphasis added). As a result of the enactment of the Community Corrections Act in 1985:

> the court is authorized to sentence an eligible defendant as defined in this section to any appropriate community-based **alternative to incarceration** provided in accordance with the terms of this chapter, and under such additional terms and conditions as the court may prescribe, **in lieu of incarceration** in a state penal institution or local jail or workhouse.

Tenn. Code Ann. § 40-36-106(e)(1) (emphasis added); *see also State v. Samuels*, 44 S.W.3d 489, 492-93 (Tenn. 2001). When sentencing a defendant to a community-based alternative, the sentencing court has the authority to set the duration of the sentence within the lawful range and

---

[3]Apparently, MCHRA refers to Mid-Cumberland Human Resources Agency, a non-profit agency where Mr. Black was ordered to perform 350 hours of unpaid community service.

retains the authority to alter the sentence imposed. *Id*. at 493. The Community Corrections Act was enacted in 1985 to "establish a policy within the state to punish selected, nonviolent felony offenders in **front-end community-based alternatives to incarceration**, thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(a) (emphasis added); *see also Samuels*, 44 S.W.3d at 492-93; *State v. Griffith*, 787 S.W.2d 340, 341 (Tenn. 1990). "The goal of the Act is to provide a means of punishment as an **alternative to incarceration**." *State v. Kendrick*, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999) (emphasis added); *see also State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987).

Our courts have specifically held that community-based alternative sentencing facilities, or community correction facilities, are not "penal institutions." *State v. Kendrick*, 10 S.W.3d 650 (Tenn. Crim. App. 1999) (holding that a defendant who was found in possession of marijuana at the residential community corrections facility where he was sentenced for a prior conviction could not be convicted of taking controlled substances into a penal institution because a community-based alternative to incarceration as defined in Tenn. Code Ann. § 40-36-102(5) is not a penal institution); *State v. Bentley*, 938 S.W.2d 706 (Tenn. Crim. App. 1996) (holding that a defendant who left a community corrections office did not commit the offense of escape from a penal institution because he was serving a community corrections sentence, an alternative to incarceration, and such a facility could not be characterized as a penal institution within the meaning of the escape statute), *overruled on other grounds by State v. West*, 19 S.W.3d 753 (Tenn. 2000).[4] Accordingly, such a facility is not a penitentiary within the meaning of Tenn. Code Ann. § 40-20-114.

As the Attorney General has opined, "even though a person may have been convicted of a felony or infamous crime, he does not automatically lose the right to seek and hold public office. The person must have also been sentenced to the penitentiary" due to the language of Tenn. Code Ann. § 40-20-114. Op. Atty. Gen. 97-169 at n.5. The record before us reflects that Mr. Black was not sentenced to the penitentiary. In its brief, the State does not argue that Mr. Black was sentenced to the penitentiary. Instead, in its statement of facts, the State asserts that after the jury found Mr. Black guilty, "the trial court imposed an alternative sentence of two years . . . ." The State's brief, in discounting the character witness's testimony about extensive community service work performed by Mr. Black, also states that the record reflects that he "paid his debt to society by performing 350

---

[4]In *State v. West*, the Tennessee Supreme Court stated:

Another case cited as possible support for West's position, *Bentley v. State*, 938 S.W.2d 706 (Tenn. Crim. App. 1996) no application for perm. to app. filed, was decided on September 18, 1996, before enactment of the most recent version of the Tennessee Supreme Court Rule 28, §3(B) [stating that the Tennessee Rules of Criminal Procedure do not apply to post-conviction proceedings]. As such, this case is implicitly overruled to the extent that it conflicts with Supreme Court Rule 28.

*West*, 19 S.W.3d at 756 n.9. The court's decision in *West* does not in any way affect the holding in *Bentley* that a community corrections facility is not a penal institution.

hours of court-mandated community service work," quoting testimony from Mr. Black.[5] Although the judgment form reflects that Mr. Black was sentenced to both TDOC and community-based alternative sentencing, those two dispositions are inconsistent since one is an alternative to incarceration. Based upon the entire record before us, we conclude Mr. Black was sentenced to a community-based alternative to incarceration and not to the penitentiary.

As a consequence, his right to seek and hold public office was not revoked upon his conviction, and he was not required to obtain a court order restoring it. That portion of the trial court's judgment denying restoration of the right to seek and hold public office is vacated.

## IV. Restoration of Citizenship Rights

Specific civil disabilities imposed as a result of conviction may be restored in certain instances pursuant to a statutory procedure for restoration as set forth in Tenn. Code Ann. §§ 40-29-101 to 105. *Cole*, 968 S.W.2d at 277. In relevant part, the statute provides that a person convicted of a felony[6] may petition for restoration of rights of citizenship upon the expiration of the maximum sentence imposed.[7] Tenn. Code Ann. § 40-29-105(c)(2)(B). Mr. Black was sentenced to a maximum of two years on October 7, 1997, and his petition for restoration of citizenship rights was filed after the expiration of the maximum sentence. There is no question, and the State does not dispute, that Mr. Black was eligible for restoration of his full citizenship rights.

The question before us is whether Mr. Black met the standard for restoration of rights. To determine what standards a court must apply in this situation, identification of the applicable statutes is necessary. Although Tenn. Code Ann. §§ 40-29-101 through 105 generally apply to restoration of citizenship rights, the legislature's most recent amendment indicates that only one subsection of Tenn. Code Ann. § 40-29-105 applies to Mr. Black's petition. That subsection, (c), provides that "the following procedure shall apply to a person rendered infamous by virtue of being convicted of a felony on or after July 1, 1996." Tenn. Code Ann. § 40-29-105(c). While subsection (a) of the

---

[5]In the Argument portion of its brief, the State merely says Mr. Black was sentenced to the Tennessee Department of Correction, but does not explain its earlier statement, the judgment form, or the fact that Mr. Black served his sentence in the community. We are aware that participation in community-based alternatives can also be used as a condition of probation in conjunction with a suspended sentence. Tenn. Code Ann. § 40-36-106(f). Nothing in the record before us, including the testimony at the hearing, and nothing on the judgment form indicates that Mr. Black's sentence was suspended. The judgment form does not indicate Mr. Black was placed on probation, as that space on the form was not checked. There was some discussion at the hearing of a subsequent change in the sentence whereby Mr. Black was put on unsupervised probation. While that order could perhaps have clarified the situation, it was not included in the appellate record.

[6]The statute also speaks in terms of conviction of an "infamous crime." All felonies committed since 1981 are infamous crimes. Tenn. Code Ann. § 40-20-112.

[7]Some persons, because of the nature of the offense, are not eligible for restoration of suffrage rights, but Mr. Black is not one of them. "[P]ersons convicted of murder, rape, treason, or voter fraud shall never be eligible to register and vote in this state." Tenn. Code Ann. § 40-29-105(c)(2)(B).

statute makes the "provisions and procedures provided for in §§ 40-29-101--40-29-104" applicable to those persons covered by subsection (a), subsection (c) does not include such language. Thus, we can only conclude that the legislature intended that persons convicted after July 1, 1996, would be eligible for restoration of citizenship rights only through the procedures and standards set out in Tenn. Code Ann. § 40-29-105(c). That provision declares a presumption for restoration of rights, providing:

> The petition shall set forth the basis for the petitioner's eligibility for restoration and shall state the reasons the petitioner believes that petitioner's full citizenship rights should be restored. The petition shall be accompanied by such certified records, statements and other documents or information as is necessary to demonstrate to the court that the petitioner is both eligible for and merits having full rights of citizenship restored. The court may require such additional proof as it deems necessary to reach a just decision on the petition. There is a presumption that a petition filed pursuant to this subsection shall be granted and that the full citizenship rights of the petitioner shall be restored. This presumption may only be overcome upon proof by a preponderance of the evidence that either the petitioner is not eligible for restoration or there is otherwise good cause to deny the petition.

Tenn. Code Ann. § 40-29-105(c)(3). Good cause is not defined in this section of the Code, and the other applicable provision provides little further guidance, stating only:

> If, upon the face of the petition or after conducting a hearing, the court finds that the petitioner's full citizenship rights should be restored, it shall so order and send a copy of such order to the state coordinator of elections.

Tenn. Code Ann. § 40-29-105(c)(5).

Interpretation of the statute applicable after 1996 requires consideration of prior law. For those persons convicted of felonies, or infamous crimes, after July 1, 1986, but before July 1, 1996, there were separate and distinct procedures for restoration of the two separate citizenship rights: the right to vote and the right to seek and hold public office. *See United States v. White*, 808 F. Supp. 586 (M.D. Tenn. 1992).

For persons convicted of infamous crimes after July 1, 1986, but before July 1, 1996, restoration of the right to vote was granted by a certificate of restoration issued by the pardoning, supervising, or incarcerating authority, not by the courts. Tenn. Code Ann. § 40-29-105(b)(3). The authority issuing the certificate was required to send a copy to the coordinator of elections. Tenn. Code Ann. § 40-29-105(b)(4). The statute specifically provided that a person eligible for restoration "may request, and then shall be issued a certificate of restoration." Tenn. Code. Ann. § 40-29-

105(b)(3). As the U.S. District Court stated, under the immediately prior system, "if he is eligible, his right to vote is restored." *White*, 808 F. Supp. at 588.[8]

In 1996, the legislature amended Tenn. Code Ann. § 40-20-105. *See* 1996 Tenn. Pub. Acts ch. 898, §§ 1-2. The legislature again changed the process for restoration of citizenship rights for a convicted felon. The legislative changes brought the process to the same posture as the pre-1986 statute, mandating that the District Attorney General receive notice when a convicted felon files a petition for restoration of rights, and giving that office the power to intervene in a case to oppose the restoration. However, as § 40-20-105(c), quoted above, states, the District Attorney General may only overcome the presumption for restoration by showing good cause.

The applicable statute requires the petition to state, in addition to facts establishing eligibility, "the reasons the petitioner believes that petitioner's full citizenship rights should be restored" and information demonstrating that the petitioner "merits" having full rights restored. Tenn. Code Ann. § 40-20-105(c). The statutes provide no guidance as to the meaning of these terms either.

We think, however, some basic principles can be found in court interpretation of the restoration process. In *Bryant v. Moore*, 198 Tenn. 335, 279 S.W.2d 517 (1955), the commissioners of the town of Atwood refused to meet with a newly elected commissioner, Mr. Bryant, because he had been convicted twenty years earlier for forgery. Mr. Bryant had had his rights of citizenship, which had been lost due to his conviction, restored by court order. The town argued Mr. Bryant was ineligible to hold the office of town commissioner because of a provision of the Public Act creating the town prohibited a person convicted of a corrupt practice or crime from holding such office. The town also relied upon the statewide statute depriving persons convicted of a felony from holding any office.[9] In ruling that the restoration of rights statute prevailed, the Court stated:

> The defendants insist that the Code Section in question, penal in nature, may be invoked to remove from office a person who has violated no laws of this State, because for all of his past infractions of the criminal laws the defendant has paid the penalty. Our Legislature, many years ago, saw proper to pass the Restoration Statute and the Legislature has not seen fit to repeal it. The purpose of this law was to wipe out the transgressions of the offending person and to give him another chance in society. For us to so hold would violate the expressed intention and the true spirit of the Restoration Statute.

*Bryant*, 198 Tenn. at 338, 279 S.W.2d at 518.

---

[8]This automatic administrative restoration of rights was the basis of the District Court's holding that a different procedure, that set out in Tenn. Code Ann. §§ 40-29-101-104, applied to restoration of the right to hold public office, because Tenn. Code Ann. § 40-20-114 provided that such right could only be restored by a court.

[9]That statute, in essence, mirrored Tenn. Code Ann. § 40-20-114.

Similarly, in *Cole*, the Tennessee Supreme Court indicated that civil disabilities are part of the punishment for a crime and no such punishment can be assessed beyond that authorized by the legislature. *Cole*, 968 S.W.2d at 277. Because the legislature has: (1) denied eligibility for restoration of the right to vote only to those persons convicted of specific crimes, Tenn. Code Ann. § 40-29-105(c)(2)(B); (2) not limited available restorations to one per person; and (3) created a presumption that rights will be restored, Tenn. Code Ann. § 40-29-105(c)(3), we think that the legislature intended that completion or expiration of the sentence satisfied the goals of the disability related to a particular conviction. In other words, the fact that a person was convicted of a crime resulting in the loss of specified citizenship rights does not justify denial of the restoration of those rights after expiration of the sentence, which is the length of time the legislature has determined fulfills the purposes of disability. Similarly, the facts about that crime or conviction do not provide a basis for denial of restoration.

To the contrary, the petitioner's conduct after his conviction, rather than before it, is the appropriate focus of a proceeding on a petition for restoration of citizenship rights. *See Special Project, the Collateral Consequences of a Criminal Conviction*, 23 VAND. L. REV. 929, 1143 (1970) (stating that "Relief from civil disabilities has traditionally been granted once the offender has been released from correctional supervision and has demonstrated that he can live a life that is consistent with the demands of society.") In the statutory provisions applicable to persons convicted before July 1, 1996, the legislature has specifically incorporated that concept into the standard for restoration. Tenn. Code Ann. § 40-29-105(a) incorporates §§ 40-29-101 through - 104 into the provisions and procedures applicable to restoration of rights for persons convicted "prior to July 1, 1986, but before July 1, 1996."[10] Tenn. Code Ann. § 4-29-102 requires that a petition for restoration be sustained

> By satisfactory proof that **ever since the judgement of disqualification**, the petitioner has sustained the character of a person of honesty, respectability and veracity, and is generally esteemed as such by the petitioner's neighbors.

Tenn. Code Ann. § 40-29-102 (emphasis added); *see also In re Curtis*, 6 Tenn. Civ. App. (6 Higgins) 12 (1915).

While both Mr. Black and the State rely on this provision, it does not appear to us that it is directly applicable to restoration proceedings initiated by persons convicted after July 1, 1996, because of the language of Tenn. Code Ann. § 40-29-105(c). Nonetheless, we find no basis in the 1996 amendment to believe that the legislature intended to depart from the basic premise that pre-conviction or pre-disqualification conduct does not constitute "good cause" to deny restoration of citizenship rights.

---

[10]This unclear language clouds the issue of whether subsection (a) makes §§ 40-29-101 through - 104 applicable to persons convicted after July 1, 1986, but before July 1, 1996, since subsection (b), specifically applicable to those persons, does not include the same language. Because Mr. Black was convicted after July 1, 1996, it is not necessary for us to attempt to discern the legislature's intent with regard to those persons.

The 1996 amendment made specific and significant changes in the burden of proof. As noted above, there now exists a presumption that a petition for restoration will be granted and full rights restored. "This presumption may only be overcome upon proof by a preponderance of the evidence that . . . there is otherwise good cause to deny the petition." Tenn. Code Ann. § 40-29-105(c). The statute shifts the burden of proof to the State to show good cause. With these precepts in mind, we examine the proof presented herein as well as the trial court's findings.

Mr. Black offered the testimony of Mr. Brinkley, Beth Robertson, and himself. Mr. Brinkley testified that he was a former school teacher and president of the local branch of the NAACP who had known Mr. Black for twenty (20) years. He testified that Mr. Black had been "a real asset to our community there in Gallatin," had served on different committees, and that he was a person that others had been able to heavily depend upon. When questioned, however, Mr. Brinkley did not know the nature or character of the offenses for which Mr. Black had been convicted.

Mr. Black himself testified during the hearing on the petition. He testified that there was nothing in his character that should preclude him from having his full rights of citizenship restored. When questioned regarding his felony conviction, Mr. Black was reluctant to admit culpability and disputed some facts surrounding his execution of the bond in question. However, he readily acknowledged that the jury believed that he had known the defendant in question was using an alias. He also agreed that if the records showed he had bonded the man out under a false name, he did not disagree. The trial court discounted Mr. Black's testimony from the bench, stating: "Mr. Black, you didn't come forward and really tell me that you admitted anything. Basically you don't take responsibility for your own actions."

The State offered the testimony of Richard Stout with TBI. He was involved in the investigation of the underlying forgery and testified to facts surrounding those events at the trial, but conceded that he did not have any direct knowledge of Mr. Black's conduct after the trial and conviction.

After hearing the testimony, the trial court made the following findings of fact:

1. David Black, a citizen of Gallatin, Tennessee, was convicted of two felonies, namely, selling marijuana on July 1, 1983.

2. In December 1993, David Black was elected City Councilman for the city of Gallatin after having received a majority of the votes in his councilman district. He qualified to run for this office by asserting that he had never been convicted of any felony.

3. After his election but before he was to assume the office of Councilman, David Black had his full rights of citizenship restored by the Circuit Court of Sumner County, Tennessee, on December 10, 1993. He was subsequently disqualified, by

order of the Chancery Court of Sumner County, from assuming the position of councilman to which he had been elected.

4. After having his full rights of citizenship restored David Black again ran for the office of Councilman for the City of Gallatin, was elected and assumed that office.

5. In addition to being a city councilman David Black was also a professional bondsman in the Sumner County Courts.

6. While a city councilman and professional bondsman, David Black was convicted and sentenced for the felony of forgery on October 7, 1997.

7. David Black now seeks, for the second time, the restoration of his full rights of citizenship.

8. It was a fraud upon the voters of the State of Tennessee for David Black to run for office in 1993 and say, under oath, that he had never been convicted of a felony when in fact he had been convicted of two felonies and had not had his civil rights restored.

9. David Black has been and still is, active in the community, his church and the NAACP. His witness, Charles Brinkley, testified for him as to his good character, but Mr. Brinkley did not know what, if anything, David Black had been convicted of or why Mr. Black was no longer a city councilman or bondsman.

10. The court finds that David Black has not proved that he has sustained the character of a person of honesty, respectability and veracity generally esteemed as such by his neighbors. On the contrary, the Court finds that Mr. Black basically does not take responsibility for his own actions.

As this excerpt makes clear, the trial court relied in large part on conduct by Mr. Black prior to his loss of citizenship rights in 1997. In fact, the court relied on conduct which pre-dated the earlier restoration of rights, i.e. his failure to disclose his prior convictions when he ran for council the first time. The only findings relating to his post-conviction conduct were that he is active in the community, his church, and the NAACP and that he does not take responsibility for his own actions. We interpret the latter as relating to Mr. Black's unwillingness to admit to some of the facts underlying his conviction for forgery.

Although the trial court acknowledged the statutory presumption for restoration, the court's conclusions reflect that it placed the burden of proof on Mr. Black and found his proof to be inadequate. The trial court's Final Order outlines the following conclusions of law, based upon the factual finding that Mr. Black did not prove that he had sustained the character of a person of "honesty, respectability, and veracity" by stating:

1. There is a presumption that a petition filed pursuant to T.C.A. 40-29-105 shall be granted and that the full citizenship rights of the Petitioner shall be restored. This presumption may only be overcome upon proof by a preponderance of the evidence that either the Petitioner is not eligible for restoration or there is otherwise good cause to deny the petition.

2. The Petitioner is eligible to have his full civil rights restored in this cause.

3. There is good cause, notwithstanding his eligibility to have his full civil rights restored in this cause.

4. The presumption that the Petition should be granted has been overcome by the proof, and the preponderance of the evidence shows that the Petition should be denied. The felony conviction at issue was incurred while David Black was an elected City Councilman and a professional bondsman- both positions of trust, which trust he betrayed.

5. This is the second time David Black has sought to have his full civil rights restored, and under the facts and circumstances of this case it would be unfair to the citizens and voters of this state to grant to Mr. Black a second restoration of full citizenship rights. . . .

In accordance with these findings and conclusions, the trial court denied the petition, yet granted a motion by Mr. Black for a partial restoration of citizenship rights. The court restored Mr. Black's right to vote, but expressly denied him the right to run for public office. This decision was based upon the trial court's feeling that allowing Mr. Black to exercise "his own personal right to vote" would not be contrary to public policy or harmful to the public good. However, the court remained adamantly steadfast that Mr. Black should not regain the right to hold public office.

The District Attorney General had argued that the court did not have authority under the new statute to restore one type of right but deny restoration of another. With this argument in mind, the trial court stated, "if it is permissible to allow Mr. Black to vote, I would be pleased to grant his petition just to allow him to vote in elections. But it expressly would be contrary to my findings or order for him to run for public office. . . ." Apparently the court intended to deny restoration of the right to vote if partial restoration is not authorized. However, the final order states, "David Black's right to cast his personal vote in public election is hereby RESTORED." Consequently, the judgment under review was a grant of restoration of the right to vote.

We conclude that the statutory presumption in favor of restoration was not overcome by a showing, by a preponderance of the evidence, of good cause to deny the petition for restoration of citizenship rights. The State provided no proof regarding Mr. Black's conduct since his citizenship rights were removed in connection with his 1997 conviction. In its only reference to post-disqualification conduct, the State argued that Mr. Black continues to deny his culpability or refuses

to take responsibility for the acts which resulted in his conviction. This argument is based on Mr. Black's testimony at the hearing in this proceeding. Having fully reviewed that testimony, we cannot conclude that it establishes the conclusion argued by the State by a preponderance of the evidence. Even if it did, however, we are unable to find a requirement that a convicted person confess to the crime for which he or she was convicted as a prerequisite to regaining citizenship rights.

While we hold that the 1996 amendment to Tenn. Code Ann. § 40-29-105 shifts the burden of proof, we do not hold that a petitioner has no burden to establish that he or she "merits" restoration.[11] In the case before us, there is simply no evidence to contradict the testimony of Mr. Black or his witness as to his conduct since his conviction.

## V. Conclusion

We vacate the trial court's denial of restoration of Mr. Black's right to seek and hold public office because he did not lose that right as a consequence of his conviction since he was not sentenced to the penitentiary. We affirm the trial court's restoration of the right to vote. Because the presumption in favor of restoration was not overcome by proof of good cause to deny it, Mr. Black was entitled to have his right to vote restored. Costs of this appeal are taxed to the Appellee, State of Tennessee.

_____
PATRICIA J. COTTRELL, JUDGE

---

[11]The trial court held Mr. Black had not met his burden of proving that he had "sustained the character of a person of honesty, respectability and veracity, and is generally esteemed as such by his neighbors" pursuant to Tenn. Code Ann. § 40-29-102. Tenn. Code Ann. § 40-29-105(c)(3) merely requires the petitioner to show that he or she merits restoration of rights. Proof regarding conduct after conviction is relevant under both requirements, but the burden of establishing reputation in the community is not explicitly incorporated into the newer statute.