IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 28, 2001

## STATE OF TENNESSEE v. JOHN ARRON HEARD,
## alias JOHN ROGER HEARD

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 220544, 220545     Rebecca J. Stern, Judge**

---

**No. E2001-00552-CCA-R3-CD**
**January 2, 2002**

---

The defendant, John Arron Heard, appeals from the judgment of the Hamilton County Criminal Court revoking his community corrections sentence. The sole issue on appeal is whether the trial court abused its discretion in ordering the defendant to serve the remainder of his sentence in the penitentiary. After careful review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Ardena J. Garth, District Public Defender, and Donna Robinson Miller, Assistant District Public Defender, Chattanooga, Tennessee, for the appellant, John Arron Heard.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; William H. Cox, III, District Attorney General; and Dean Ferraro, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant pled guilty to assault and aggravated kidnapping and was sentenced to eleven months and twenty-nine days in the workhouse for the assault conviction and eight years in the Department of Correction for the aggravated kidnapping conviction, to be served consecutively. Pursuant to the plea agreement, the defendant's eight-year sentence was suspended and he was placed on supervised probation.

A probation violation report was filed on January 27, 1999, on the basis of the defendant's failure to report and failure to pay fees. On February 8, 1999, the court entered an order that the defendant be arrested. On February 26, 1999, a follow-up probation violation report was filed, stating that the defendant was "on absconder status" because he had not reported since December 1, 1998. That report further stated that the defendant was on a two-year probation for convictions

of burglary and theft, that probation expiring on April 9, 1999, and that a violation report had been submitted in that matter as well.  Apparently, the defendant was taken into custody on April 20, 1999.

Although the record on appeal does not contain an order revoking the defendant's suspended sentence, this apparently occurred because on May 27, 1999, the trial court placed the defendant in the Hamilton County Community Corrections Program.  However, the court then removed him from the program on November 1, 1999, pending a hearing, because he "left house arrest."  The defendant was again assigned to the community corrections program on March 27, 2000.  On May 5, 2000, the trial court entered another order removing the defendant from the program for a second time for leaving the arrest house.  Apparently, this order was not pursued because on December 11, 2000, the trial court removed the defendant from the program yet again because he had absconded from the arrest house and had not provided verification of his employment.  The defendant was arrested, and a hearing was held on February 12, 2001, to determine whether his community corrections sentence should be revoked.

At the hearing, Chris Jackson, the defendant's probation officer with the Hamilton County Community Corrections Program, testified that the defendant left the arrest house without permission on December 2, 2000, and did not return until the following day.  The defendant told Jackson that he had been working, but Jackson did not even know that the defendant supposedly was employed.  When the defendant reported to the program a few days later, he explained his absence by giving Jackson a paper from Vanessa Reeves stating he had worked at the Bi-Lo warehouse.  Jackson called the number listed on the paper but only got an answering machine.  He then called the Bi-Lo warehouse and was told that they had never heard of the defendant or Vanessa Reeves.  Jackson said that the defendant's employment while in the program had been sporadic, with the defendant working only a few months.  The defendant's drug screen administered that day tested positive for cocaine and marijuana.

Tammy Heard, the defendant's wife, testified that the defendant had a drug problem and needed to be placed in a rehabilitation program.  She said that she was "mean and cruel" to the defendant when he lost his last job and that they were having family problems.  As for why the trial court should give the defendant another chance, Mrs. Heard stated that the defendant is "good" and that the "only time he is bad is when he gets those drugs in his system and they make him, you know, crazy and I feel like he don't need to be put in no penitentiary."

The defendant testified that he had refrained from using drugs during the nine months prior to the December 2000 positive drug screen.  Jackson verified that the defendant's previous drug screens had been negative.  As to why he relapsed and used drugs in December, the defendant said that he had lost his job and he and his wife had been arguing, "so it pushed me a little."  When asked about the situation at the Bi-Lo warehouse, the defendant responded, "[T]hat was the night I was getting high and that was just a way of me trying to cover up, that's all.  It was my drug problem."

The defendant admitted that he had used drugs since age 17 and that he knew using drugs was a violation of his community corrections sentence.  He said that he had been unable to enter a

drug treatment program on his own because he did not have any insurance. The defendant also admitted that he had been able to stop using drugs on a few occasions in the past but had not been able to stop entirely. The defendant stated, "I am a junkie if that's what you want to hear. . . . I can't do it by myself if that's what you want to know, no, I can't."

At the conclusion of the hearing, the trial court revoked the defendant's community corrections sentence, finding that the defendant had violated the conditions of his sentence by absconding from the arrest house on December 2, 2000, by not reporting as required, by lying to the community corrections officer about a job at the Bi-Lo warehouse, and by testing positive for cocaine and marijuana. The court ordered the defendant to serve the remainder of his sentence in the Department of Correction with credit for time served.

## ANALYSIS

The defendant argues that the evidence was insufficient to revoke his community corrections sentence.

The primary purpose of the Community Corrections Act of 1985 is to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" Tenn. Code Ann. § 40-36-103(1) (1997). The program offers a flexible alternative beneficial to both the defendant and society. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990).

Once the defendant violates the terms of his community corrections sentence, the trial court may revoke the sentence and impose a new one. Tennessee Code Annotated Section 40-36-106(e)(4) grants the trial court the authority to resentence a defendant following the revocation of the original sentence. The court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4) (Supp. 2000).

Revocation of a community corrections sentence occurs upon finding by a preponderance of the evidence that the defendant has violated the conditions of the agreement. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). "The judgment of a trial court in this regard will not be disturbed on appeal unless it appears that there has been an abuse of discretion." Id. For a reviewing court to find an abuse of discretion, it must be shown that the record contains no substantial evidence to support the trial judge's conclusion. Id.

The record readily supports the decision of the trial court to terminate the defendant from the community corrections program. In his testimony, although offering an explanation for his transgressions, the defendant admitted absconding, failing to report, and lying about his employment. Accordingly, we cannot conclude that the trial court abused its discretion in terminating the defendant from community corrections. Additionally, we note that he was not eligible for placement in the community corrections program. His conviction was for aggravated kidnapping, for which

-3-

he had been sentenced to incarceration for eight years. Tennessee Code Annotated Section 40-36-106(a)(2), which sets out the eligibility criteria for community corrections, provides that a defendant convicted of a crime against the person, in violation of title 39, chapter 13, parts 1-5, is not eligible for placement into the program. Since the defendant was convicted of aggravated kidnapping, in violation of Tennessee Code Annotated Section 39-13-304, he was statutorily ineligible for placement into community corrections. Additionally, he was ineligible for placement as a "special needs" offender into the program, pursuant to Tennessee Code Annotated Section 40-36-106(c), because inclusion under that section requires that the defendant first be eligible for probation, for which he was, likewise, ineligible by virtue of Tennessee Code Annotated Section 40-35-303(a), which prohibits a defendant convicted of aggravated kidnapping from receiving a suspended sentence. See State v. Kendrick, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999).

## **CONCLUSION**

We conclude that the court did not abuse its discretion in revoking the defendant's community corrections placement and ordering him to serve the remainder of his sentence in confinement. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE