IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JULY 1999 SESSION

FILED

September 10, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9810-CR-00374 |
| Appellee, | * | SULLIVAN COUNTY |
| VS. | * | Hon. R. Jerry Beck, Judge |
| KENNETH LEE KENDRICK, | * | (Marijuana in a Penal Institution) |
| Appellant. | * | |

For Appellant:

Terry L. Jordan
Assistant Public Defender
P.O. Box 839
Blountville, TN  37617

For Appellee:

Paul G. Summers
Attorney General and Reporter

Clinton J. Morgan
Counsel for the State
425 Fifth Avenue North
Nashville, TN  37243-0493

Joseph Eugene Perrin
Assistant District Attorney General
P.O. Box 526
Blountville, TN  37617

OPINION FILED:_____

REVERSED AND DISMISSED

GARY R. WADE, PRESIDING JUDGE

<u>OPINION</u>

The defendant, Kenneth Lee Kendrick, was convicted in a bench trial of knowingly taking marijuana into a penal institution. Tenn. Code Ann. § 39-16-201. The trial court imposed a Range I sentence of four years.

In this appeal of right, the defendant contends that a community corrections facility does not qualify as a penal institution and argues that the trial court erred by the imposition of a four-year sentence and the denial of any form of alternative sentencing. Because the state was unable to establish that the defendant possessed marijuana in a "penal institution," the conviction must be reversed and the charge dismissed.

On December 19, 1996, the defendant, who was serving a six-year community corrections sentence in the John R. Hay House for burglary and theft over $1,000.00, was found in possession of marijuana. Stuart Canter, a case officer at the facility, reported the incident to Officer Thomas Patton of the Kingsport Police Department. The defendant admitted ownership of the marijuana, "three hand-rolled, smoked down roaches," which was found in a Marlboro cigarette pack. The TBI laboratory confirmed the nature of the substance. The defendant offered no proof in his own behalf and at the conclusion of the evidence, sought a judgment of acquittal on the basis that the Hay House, which met the guidelines for a community corrections program, did not fall within the definition of a penal institution. The trial court rejected the argument, holding that the Hay House had "unique characteristics" beyond the usual community corrections facility and, therefore, qualified as a penal institution.

I

The pertinent portion of the statute provides as follows:

(a)  It is unlawful for any person to:
(1)  Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances found in chapter 17, part 4 of this title.

Tenn. Code Ann. § 39-16-201 (emphasis added).  Initially, the defendant maintains that a facility to which a person is committed under the Tennessee Community Corrections Act of 1985, Tenn. Code Ann. § 40-36-101, et seq., is not a penal institution.  The defendant asserts that the Hay House, as defined by Tenn. Code Ann. § 40-36-102(5) is a "[c]ommunity-based alternative[] to incarceration" which provides services and programs in the place of incarceration and that the alternatives include a short-term community residential option and individualized treatment services as provided by Tenn. Code Ann. § 40-36-302.  The defendant concedes that he required full-time supervision during the course of his treatment at the facility but points out that community corrections funds may not be utilized for the operation of municipal or county jails or state prison facilities.  Tenn. Code Ann. § 40-36-303(a)(1) & (2).

In support of his argument, the defendant has cited a memorandum from William B. Hutcherson, Jr., staff counsel to the Department of Correction.  In pertinent part, the memorandum provides as follows:

Hay House, Inc., is a private agency with which the Department of Correction contracts under the community corrections grant funds program authorized pursuant to T.C.A. § 40-36-301.  An example of a community program service which may be contracted with is a private agency such as Hay House, Inc. which provides short-term community residential treatment options as set forth in T.C.A. § 40-36-302(a)(2).  As set forth in this statute, the focus of such programs is "treatment rather

3

than detention" as an alternative to incarceration.

> Therefore, <u>this office would refrain from defining or referring to any community correction program, residential or otherwise, as a correctional facility or penal institution</u>.

(Emphasis added).

> A stipulation of facts includes the following excerpt:

> The Hay House is inspected and meets State standards and guidelines for community corrections. Each person committed to the John R. Hay House (Hay House) must sign a contract with Hay House which enumerates the rules by which the person is to abide while at the facility. <u>Every individual referred to the Hay House has a treatment program for a particular program with which that person must comply to remain at the facility</u>. After the residential program is completed, the person is placed on home supervision with guidelines set out by Hay House which include treatment, drug screens, and reporting. The Hay House is one of only two Community Corrections programs in the State that house convicted felons that are committed to the program <u>in lieu of incarceration</u>. The felony offenders committed to the program are restricted in their movements in the community. To leave the program for community activities such as employment, the offender must first have staff verification of the activity. After verification, the offender must sign out, be transported by program transportation and then sign in after being returned to the program. A 24 hour furlough may be obtained by an offender only after certain criteria are met including a minimum continuous stay at the facility prior to applying. <u>Although not incarcerated per se</u>, the convicted felons housed there are given jail credit for the time they are in the program.

(Emphasis added).

The state points out that the Hay House provides full-time custodial supervision to felony offenders who are restricted in their movements, must have staff verification of outside activities, must sign in and out, and must use official transportation. Convicted felons in the Hay House receive jail credit. For all these

4

reasons, the state submits that this facility, due to its uniqueness, falls within the definition of a penal institution, "where prisoners are quartered _or_ under custodial supervision...." Tenn. Code Ann. § 39-16-201 (emphasis added). The state argues that the term followed by the disjunctive and "under custodial supervision" broadens the application of the statute.

In State v. Bentley, 938 S.W.2d 706 (Tenn. Crim. App. 1996), a panel of this court ruled that the defendant had not committed the offense of escape from a penal institution by leaving a community correction office after being informed that he would have to return to jail immediately due to his removal from the program. Tenn. Code Ann. § 39-16-605. The underlying rationale for the decision was that a community corrections office did not qualify as a penal institution. The court made the interpretation from the language of Tenn. Code Ann. § 39-16-601, which prohibits an escape from a penal institution. That legislation includes a definition of the term penal institution:

> Any institution or facility used to house or detain a person ... [c]onvicted of a crime; ... [a]djudicated delinquent by a juvenile court; or ... [w]ho is in direct or indirect custody after a lawful arrest.

Tenn. Code Ann. § 39-16-601(4)(A)-(C).

In Bentley, Judge John H. Peay wrote the following for the court in its conclusion that there was a significant difference between a placement in community corrections and a sentence to a custodial facility:

> For purposes of the escape statute, T.C.A. § 39-16-601 defines "penal institution" as "any institution used to house or detain a person: (A) [c]onvicted of a crime; or (B) [w]ho is in direct or indirect custody after a lawful arrest." T.C.A. § 39-16-601(4) (1991) (emphasis added). Community Corrections, however, is an alternative to incarceration and is noncustodial in nature. See T.C.A. 40-36-102(5) (1990); T.C.A. § 40-36-104(4) (1990);

> T.C.A. § 40-36-106(e)(1) (1990). Community Corrections
> Programs "involve close supervision but ... do not involve
> housing of the offender in a jail, workhouse or community
> facility." T.C.A. § 40-36-302(a)(1) (1990). From our
> review of the plain language of the statutory provisions at
> issue, we conclude that Community Corrections does not
> qualify as a "penal institution" for the purposes of the
> escape statute. Moreover, we find no evidence that the
> legislature, in enacting the Community Corrections Act of
> 1985 and the Criminal Sentencing Reform Act of 1989,
> intended to include a violation of the conditions of a
> Community Corrections sentence in the criminal offense
> of escape from a penal institution. Accordingly, from a
> review of the entire record, we find that ... the petitioner
> was serving a Community Corrections sentence and his
> departure from the Community Corrections office did not
> meet the statutory requirements of the criminal offense of
> escape from a penal institution.

Bentley, 938 S.W.2d at 710.

The trial court here distinguished this case from the holding in Bentley because of "[the] residential status [of the Hay House]." It concluded that the Bentley ruling was specifically limited to the escape statute and that the 24 hour per day, seven days per week supervision at the Hay House was more like a custodial facility than other community corrections facilities. The trial court reasoned that the introduction of a controlled substance to the Hay House would present all of the dangers incident to the same conduct in a prison.

The core question, of course, is whether the term "penal institution," as provided by the applicable statute, should be construed to include community correction facilities such as the Hay House. It should be noted that the 1994 amendment to the statute substituted the word "penal" for "state, county or municipal" institution.

In matters of statutory construction the role of this court is to ascertain

6

and give effect to the intent of the legislature. State v. Williams, 623 S.W.2d 121, 124 (Tenn. Crim. App. 1981). A basic principle of due process is that an enactment whose prohibitions are not sufficiently defined is void for vagueness. State v. Lakatos, 900 S.W.2d 699, 701 (Tenn. Crim. App. 1994). Generally, the language of a penal statute must be clear and concise to give adequate warning so that individuals might avoid the forbidden conduct. State v. Boyd, 925 S.W.2d 237, 242-43 (Tenn. Crim. App. 1995). Yet, legislative enactments must be interpreted in their natural and ordinary sense without a forced construction to either limit or expand their meaning. State v. Thomas, 635 S.W.2d 114, 116 (Tenn. 1982). Courts must construe statutes as a whole and in conjunction with their surrounding parts; the interpretation should be consistent with their legislative purpose. State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995). The meaning of a statute is to be determined not from specific words in a single sentence or section but from the act in its entirety in light of the general purpose of the legislation; any interpretations should express the intent and purpose of the legislation. Loftin v. Langsdon, 813 S.W.2d 475, 478-79 (Tenn. App. 1991); National Gas Distrib., Inc. v. State, 804 S.W.2d 66, 67 (Tenn. 1991).

The 1989 Act requires that each of the criminal statutes be fairly interpreted. Strict construction is no longer required in ascertaining the meaning and application of a penal statute:

> **Construction of criminal code.--**The provisions of this title shall be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code.

Tenn. Code Ann. § 39-11-104.

The Community Corrections Act of 1985, which must be read pari

7

materia with the 1989 Act, has a specific mission:

> **Purposes of chapter.--**The purposes of this chapter are to:
>   (1) Establish a policy within the state to punish selected,  nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders; and
>   (2) Establish a mechanism whereby state funds are granted to local governments and qualified private agencies to develop a range of front-end community based punishments and services for eligible offenders under this chapter.

Tenn. Code Ann. § 40-36-103.

To be eligible for community corrections under Tenn. Code Ann. § 40-36-106(c), a defendant must first be eligible for probation under Tenn. Code Ann. § 40-35-303.  State v. Staten, 787 S.W.2d  934, 936 (Tenn. Crim. App. 1989).  The goal of the Act is to provide a means of punishment as an alternative to incarceration.  Those who qualify under the Act are "selected, nonviolent offenders."  Tenn. Code Ann. § 40-36-103.  The "front-end community based alternative," as provided by statute, was designed to provide "a degree of flexibility" consistent with societal aims not previously available under the more traditional methods of correction.  See State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990).

The traditional rules of interpretation, the applicable case law, and the objectives of the 1985 Community Corrections Act lead us to the conclusion that the defendant in this case was not housed in a "penal institution where prisoners are quartered or [otherwise] under custodial supervision...." Tenn. Code Ann. § 39-16-201(a)(1).  There is a historical distinction between a prisoner incarcerated in a penal institution and a nonviolent offender deemed suitable for a community-based alternative sentence.  The risk of harm to the public for a violation of the statute is, in our view, greater for a penal institution, which is primarily reserved, according to statute, for "felons committing the most severe offenses," those with "criminal histories evincing a clear disregard for the laws and

8

morals of society," and "fail[ed] ... past efforts at rehabilitation...." Tenn. Code Ann. § 40-35-102(5).
Often a prison is specially designed to accommodate violent criminals. Nonviolent offenders are
afforded the opportunity at least for an alternative sentence dedicated to rehabilitation. Generally,
there is a lesser degree of supervision. Furthermore, the analogy between an escape from a penal
institution, as defined in Bentley, and taking a controlled substance into a penal institution is easily
drawn. For this court to adopt different definitions of the term "penal institution" for similar statutes
would hardly serve the doctrine of stare decisis. As to this defendant, the state obviously could seek a
violation of the terms of the community corrections agreement and ask for the imposition of the original
sentence. Despite this ruling, this remedy appears to remain viable; but, because the defendant has
presented a meritorious claim, this court must grant relief from the conviction.


II

Next, the defendant complains that the trial court should have granted
probation, intensive probation, or split confinement rather than sentence the
defendant to the Department of Correction. The defendant argues that he has
changed his life by maintaining employment and remaining drug-free since the
incident at the Hay House. Although we have reversed the conviction, we will
nonetheless address the sentencing issue.


When there is a challenge to the length, range, or manner of service of a sentence, it
is the duty of this court to conduct a de novo review with a presumption that the determinations made
by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon
the affirmative showing in the record that the trial court considered the sentencing principles and all
relevant

facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883
S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the

9

1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The record in this case demonstrates that the trial court made adequate findings of fact.

Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285 (Tenn.1978). The nature and circumstances of the offenses may often be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403 (Tenn. Crim. App. 1981). A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158 (Tenn. 1983).

As previously indicated, the purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. Even in cases where the defendant meets the minimum requirements of the Community Corrections Act of 1985, however, the defendant is not necessarily entitled to be sentenced under the Act as a matter of law or right.

10

State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App.1987). The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and

Tenn. Code Ann. § 40-36-106(a) (emphasis added).

This crime qualifies as a Class C felony with a Range I sentence of three to six years. Tenn. Code Ann. § 40-35-112(a)(3). Two enhancement factors were applied: (1) that the defendant had a previous history of criminal convictions; and (2) that the defendant committed the crime while on a form of release into the community. Tenn. Code Ann. § 40-35-114(1) & (13)(E). Because the defendant obtained a graduate equivalent diploma, had maintained employment, and had not failed any drug screens, the trial court recognized some mitigation. Yet the sentence of four years was based upon the enhancement factors outweighing the mitigation factors.

In our view, the trial court imposed an appropriate sentence. The defendant brazenly violated the most important condition of his rehabilitation plan.

Had the statute applied to the defendant, we would have upheld the ruling.

      As stated, the conviction is reversed.  The cause is dismissed at the cost of the state.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
David H. Welles, Judge


_____
Joe G. Riley, Judge