IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 6, 2007

**STATE OF TENNESSEE v. RODERICK CHAPMAN**

**Appeal from the Criminal Court for Shelby County**
**No. 05-06763      James C. Beasley, Jr., Judge**

———————————

**No. W2007-00140-CCA-R3-CD  - Filed January 10, 2008**

———————————

The defendant, Roderick Chapman, pleaded guilty to counts of burglary and aggravated assault and was sentenced as a Range II offender in Shelby County Criminal Court to an effective five-year term to be served in a community corrections program, with the first year to be served in the Synergy drug treatment program. On January 5, 2007, the court revoked the community corrections sentence and resentenced the defendant as a career offender to serve twelve years in the Department of Correction. From that order, the defendant appeals. Upon review, we affirm the judgment below as modified.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed as Modified**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Pam Fleming, Assistant District Attorney General; and David Pritchard, Assistant District Attorney General, for the appellee, State of Tennessee.

Garland Erguden, Assistant Public Defender; Rusty White, Assistant District Public Defender; and Michael Johnson, Assistant District Public Defender, for the appellant, Roderick Chapman.

**OPINION**

On September 27, 2005, the Shelby County Grand Jury indicted Roderick Chapman, the defendant, on counts of burglary and aggravated assault. On March 15, 2006, the defendant pleaded guilty to the charges. Although the defendant had sufficient felony convictions to be sentenced as a career offender, his plea agreement sentenced him as a Range II offender. He received a sentence of five years for the burglary conviction and a concurrent sentence of eleven months and twenty-nine days for the assault conviction. The defendant was allowed to serve his sentence in the community corrections program, and was released to the Synergy Foundation, a residential drug treatment program, for a one year treatment regime under the supervision of community corrections.

At the sentencing hearing, the defendant testified that he was forty-two years old and had a criminal history consisting of twenty-one convictions, twelve of which were felony convictions. He admitted to having a drug problem, and sought to be placed in the Synergy drug treatment program for help with his addiction to crack cocaine. He testified that he understood that Synergy was a program with very strict rules, and that if he violated them he would be discharged from the program, and be in violation of his probation.

Upon questioning from the court, the defendant agreed that he was a career offender. The judge stated that as a career offender, a guilty plea to the burglary charge would be subject to a sentence of twelve years with a sixty percent service requirement. The judge told the defendant that if he violated the terms of his community corrections, he would no longer have the benefit of a five-year sentence as a Range II offender and would be resentenced as a career offender.

A revocation hearing was held for the defendant on January 5, 2007. Feleicia Elion testified that she was the defendant's case officer in the community corrections program and that he was placed under her supervision on April 24, 2006. Ms. Elion testified that on September 25, 2006, she received a phone call from Jack Scott at Synergy, informing her that the defendant had been unsuccessfully discharged from the program. On cross examination she testified she received a fax September 26, 2006 providing more details of the discharge. The fax stated that the defendant was discharged due to a relationship with a woman, and it was noted that his "attitude and behavior over the last week or 10 days had been characterized as no humbleness, no humility. And when he was confronted about the violation, he became - had a negative outburst and then they had to calm him down with threats of leaving the facility." Ms. Elion's attempts to contact the defendant after receiving word of his discharge from Synergy were unsuccessful.

The defendant testified a female patient at Synergy placed a letter in his "study folder" stating that she liked him and wanted to talk to him. Such a relationship was a violation of the Synergy Program rules. He testified that he turned the letter over to a Synergy supervisor, who turned it over to Jack Scott. The defendant and the female patient were both subsequently terminated from the program. After his termination, the defendant stayed two nights at the mission, then returned to his home. He testified that he did not contact Ms. Elion because her office had relocated, but he took responsibility for his failure to make contact. He testified that he turned himself in when he learned there was a warrant out for his arrest.

On cross examination, the defendant testified that he didn't know why anyone at Synergy would report he had a negative attitude. He said it could possibly be the result of a conversation between him and Mr. Scott about a coin given to those in recovery programs. He stated that possibly Mr. Scott misinterpreted his attitude.

The trial court concluded the defendant had violated the terms of his community corrections sentence and ordered it revoked. The trial court noted the defendant's lengthy criminal history, including his numerous felony convictions. After finding no enhancement or mitigating factors, the trial court determined that the defendant was a career offender, and as such, sentenced

him to twelve years to be served in the Department of Correction with seven and a half months "street credit".

The defendant filed a timely appeal which does not challenge the revocation but argues that the trial court's resentencing him as a career offender was prohibited by *State v. Patty,* 922 S.W.2d 102 (Tenn. 1995). The state counters that the sentence is proper because the defendant's criminal history qualified him as a career offender, and that the community corrections statutes have been amended since *Patty* to allow such an increase.

Appellate review of the length, range, or manner of service of a sentence imposed by the trial court is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). However, if "it appears that the trial court has failed to consider or comply with the statutory provisions governing sentencing, appellate review is de novo on the record without a presumption of correctness." *State v. Samuels,* 44 S.W.3d 489, 492 (Tenn. 2001) (citing *State v. Winfield,* 23 S.W.3d 279, 283 (Tenn. 2000)). When a trial court revokes a defendant's community corrections sentence,

> the court may resentence the defendant to any appropriate sentencing
> alternative, including incarceration, for any period of time up to the
> maximum sentence provided for the offense committed, less any time
> actually served in any community-based alternative to incarceration.
> The resentencing shall be conducted in compliance with § 40-35-210.

T.C.A. § 40-36-106(e) (4) (2006). The trial court may impose a sentence greater than the original sentence without offending the double jeopardy provisions of either the United States Constitution or Tennessee Constitution. *State v. Griffith,* 787 S.W.2d 340, 341-42 (Tenn. 1990). Nonetheless, before ordering a new sentence, the trial court must conduct a sentencing hearing pursuant to the principles of sentencing. *See State v. Cooper,* 977 S.W.2d 130, 132 (Tenn. Crim. App. 1998). Furthermore, the trial court must state on the record its reasons for imposing a new sentence and "shall include specific findings of fact upon which application of the sentencing principles was based." T.C.A. § 40-35-209(c) (2006); *State v. James Austin Patterson,* No. 02C01-9308-CC-00174, slip op. at 3 (Tenn. Crim. App., Jackson, May 25, 1994); *see generally State v. Ervin,* 939 S.W.2d 581 (Tenn. Crim. App. 1996), *perm. app. denied* (Tenn. 1997).

In *Patty,* our supreme court held that section 40-36-106(e) (4) did not authorize resentencing in a higher range than that of the original sentence. *Patty,* 922 S.W.2d at 103. In that case, Mr. Patty originally received two-year Range I sentences for each of the two Class E felonies for which he was convicted. After revoking his community corrections sentence, the trial court increased the defendant's sentences to four years each, even though the maximum sentence for a Range I offender convicted of a Class E felony was two years. The supreme court upheld this court's decision that the trial court's resentencing was not authorized, holding "that a trial judge imposing a new sentence as a result of community corrections failure is bound to sentence the defendant within the range of the original sentence." *Id.* at 104.

The state argues that since the decision in *Patty*, the community corrections statute was amended to require that resentencing be conducted pursuant to the sentencing procedures set forth in Tennessee Code Annotated section 40-35-210, which provides that "[a]t the conclusion of the sentencing hearing, the court shall first determine the appropriate range of sentence." T.C.A. § 40-35-210(a) (2006). The state argues that it was therefore proper for the trial court to determine the defendant was a career offender at his resentencing hearing.

This court heard a similar argument in *State v. Lee*, W2006-01849-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, Aug. 3, 2007). The *Lee* case involved a defendant originally sentenced as a Range I offender, but later resentenced as a Range II offender after his community corrections sentence was revoked. *See id.* The court addressed the argument that held that the amendments to Tennessee Code Annotated section 40-35-210 allowed a trial court to increase a defendant's range at sentencing, finding

> Under section 40-35-210(a), to determine a defendant's sentence, a trial court "shall first determine the appropriate range of sentence." This does not, however, give the trial court any more power to alter a defendant's original sentencing range after revoking a community corrections sentence that it would have to alter an already agreed-upon range that was accepted by the trial court in any other circumstance.

*Lee*, slip op. at 4.

The facts in this case mirror those in *Lee*. The trial court judge accepted the plea agreement that sentenced the defendant as a Range II offender. He had the power to reject the plea under Rule 32 and chose not to. We are sympathetic to the intent of the trial court judge in sentencing the defendant as a Range II offender, therefore making him eligible for community corrections and the Synergy program. The threatened twelve-year sentence for the defendant would have made the defendant ineligible for probation because the sentence exceeded eight years. *See* Tenn. Code Ann. § 40-35-303(a) (2003). Before being placed in community corrections, an offender must first be eligible for regular probation. *State v. Cowan,* 40 S.W.3d 85, 86 (Tenn. Crim. App. 2000) (citations omitted); *State v. Kendrick,* 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999). However, by accepting the plea agreement sentencing the defendant as a Range II offender, the law is clear that the trial court cannot later alter the range when resentencing the defendant.

The state further argues that this case is distinguished from *Patty* because the defendant in this case was at all times a career offender. This argument was similarly rejected in *Lee*. "Under *Patty*, whether a defendant actually qualifies for a range different from that under which he was originally sentenced is not significant. Rather, the court held that upon revoking a community corrections sentence, a trial court is 'bound to sentence the defendant *within the range of the original sentence.*'" *Lee,* slip op. at 3 (quoting *Patty*, 922 S.W.2d at 104 (emphasis added)).

The state's final argument, that the defendant knew he faced the risk of being resentenced as a career offender if he violated the conditions of his community corrections, is irrelevant.

The appropriate sentencing range for the defendant was Range II, which was the range to which the defendant pleaded guilty and which the trial court originally applied. Therefore, the defendant's new sentence of twelve years exceeded the maximum sentence for his conviction range. *See* T.C.A. § 39-14-402(c) (2003); 40-35-112(b) (4) (2003). The record makes it clear that given the presentence report, the defendant's criminal history, and the evidence presented at the resentencing hearing, the intent of the trial court was to give the defendant the maximum sentence available. In this case, the maximum sentence for a Range II offender convicted of a Class D felony is eight years. *See id*. We therefore affirm the judgment of the trial court but modify the defendant's sentence to eight years in the Department of Correction as a Range II offender.

_____
JAMES CURWOOD WITT, JR., JUDGE