IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2011

## STATE OF TENNESSEE v. BARRON LAMAR CURRIE

**Direct Appeal from the Circuit Court for Madison County**
**No. 09-754      Donald H. Allen, Judge**

_____

**No. W2010-01620-CCA-R3-CD - Filed August 25, 2011**

_____

The Defendant-Appellant, Barron Lamar Currie, entered a guilty plea to aggravated burglary, a Class C felony, and theft of property of property over $500, a Class E felony. Pursuant to his plea agreement, the Defendant-Appellant received an effective sentence of eight years with the manner of service to be determined by the trial court. The trial court ordered the Defendant-Appellant to serve the eight-year term in confinement. The Defendant-Appellant's sole issue for our review is whether the trial court erred in denying any form of alternative sentencing. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

George Morton Googe, District Public Defender; Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the Defendant-Appellant, Barron Lamar Currie.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

At the guilty plea colloquy, the State presented the following recitation of the evidence in support of the convictions:

> [I]n August of 2009, a neighbor to Mr. Chad Graves observed an individual taking property out of Mr. Graves' residence and confronted that individual and ... got the tag number. They dispatched deputies. The Tennessee Highway

Patrol Officers came into contact with Mr. Currie, stopped that vehicle and came into contact with him. The victim then identified or came home and noticed that there was [sic] some things gone from the residence and some damage to the residence. Mr. Currie was interviewed by law enforcement and he did admit, Your Honor, to going into this residence and taking possession over these items. Thus[,] the State would show at trial that on or about August 6th, 2009 that Mr. Currie did unlawfully enter the habitation of Chad Graves without his effective consent and with intent to commit theft of property and that he did knowingly exercise control over property being a television and miscellaneous items over the value of $500 without the effective consent of Chad Graves, the owner, with intent to deprive the owner of the property.

At the sentencing hearing, the Defendant-Appellant agreed to pay restitution to the victim in the amount of $999.98. The State also offered the pre-sentence report into evidence as an exhibit. The Defendant-Appellant, age 29, testified that he lived in Madison County with his fianceé. He agreed that he was guilty of the charged offenses and provided law enforcement with a statement of admission when he was arrested. He told the court that he had previously served six years of a ten-year sentence in prison. Since his release from prison, the Defendant-Appellant had been charged with a seat-belt violation and driving without a license offense. He explained why he committed the instant offense:

At the time, a lot of things were going on in my life. Due to the fact of a lack of work, a lot of pressure at home, bills. I figured by going into the gentlemen's house and taking a couple of things, I could sell them and get money to pay a couple of bills. Since then, I'm sorry. I regret it. First of all, I take full responsibility for what I did.

The Defendant-Appellant told the court that he was "[i]n the process of getting married" and had obtained two jobs. The Defendant-Appellant was employed as a head cook at a local restaurant, working forty hours a week. He also detailed cars six days a week. Given how much he worked, the Defendant-Appellant believed he would be too busy to commit any crime. Two letters of recommendation from the Defendant-Appellant's employers were admitted into evidence. The Defendant-Appellant asked the court for "a second-chance."

The State advised the trial court that the Defendant-Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate sentencing range. The State agreed to seek a Range II sentence, rather than Range III or career offender, based on the Defendant-Appellant's admission and entry of the guilty plea in this case. The State advocated for an effective sentence of eight years to be

served in confinement.

The trial court ordered the Defendant-Appellant to serve his sentence in confinement.

## ANALYSIS

The Defendant-Appellant argues that the trial court erred in denying any form of alternative sentencing. The State maintains the trial court properly sentenced the Defendant-Appellant.

The standard of review for challenges to the manner in which the trial court imposed sentence is de novo upon the record with a presumption of correctness as to the trial court's determination. T.C.A. § 40-35-401(d) (2006). However, the presumption of correctness does not apply when the appealing party demonstrates that the trial court failed to affirmatively consider the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn.1991). Only upon such a showing will our review become purely de novo. Id.

In our de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his or her own behalf, (7) any statistical information as to sentencing practices for similar offenses in the state, and (8) the potential for rehabilitation with treatment. T.C.A. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. See T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. T.C.A. § 40-35-303(b) (2006). No criminal defendant is automatically entitled to probation as a matter of law. Id., Sentencing Commission Comments; see State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App.2002) (citation omitted).

The trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present

condition, including physical and mental condition, and the deterrent effect on the defendant when considering probation. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App.1999). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the appropriate sentence. See T.C.A. § 40-35-103(5) (2006). Moreover, our supreme court has held that "truthfulness is certainly a factor which the court may consider in deciding whether to grant or deny probation." State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983).

In deciding whether to order confinement, the trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; (2) confinement is necessary to avoid depreciating the seriousness of the offense, or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses; or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. T.C.A. § 40-35-103(1)(A)-(C) (2006). The trial court should also consider the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 (2006). T.C.A. § 40-35-210(b)(5) (2006); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Finally, the sentence imposed should be the least severe measure necessary to achieve its purpose. T.C.A. § 40-35-103(4) (2006).

The Defendant-Appellant does not argue, nor do we find that the trial court failed to affirmatively consider the sentencing principles and all relevant facts and circumstances in this case. Therefore, the trial court's sentencing determination is presumed correct. The Defendant-Appellant argues that he was entitled to alternative sentencing because he had obtained two jobs, intended to get married, demonstrated remorse for his actions, and was willing to pay restitution to the victim. In sentencing the Defendant-Appellant, the record shows that the trial court considered all of these factors. However, the court detailed the Defendant-Appellant's extensive criminal history which consisted of seven prior convictions for aggravated robbery, a conviction for burglary other than a habitation, four felony convictions for theft, two misdemeanor convictions for theft, two felony vandalism convictions, and one misdemeanor vandalism conviction. The trial court then stated:

> I've considered the defendant's physical and mental conditions and apparently no physical or mental problems at all. That certainly is to his benefit. Of course, certainly I have to consider his criminal history which as I said earlier is very extensive history. I certainly considered the facts and circumstances surrounding this offenses [sic]. This involves again a home invasion which is a very serious problem within this community. As I said before in other cases, you know, Madison County has just suffered a rash of home burglaries over the last couple of years and probably at an all time record

-4-

high number of burglaries being committed within this community. I do take that into consideration. Obviously the Court has to consider the defendant's potential for rehabilitation. Unfortunately in this case, the defendant has indicated or has proven over the last several years that he cannot be rehabilitated. He has been placed on alternative sentencing and unfortunately he was never able to successfully complete those sentences. I have to also consider the interests of society and whether or not society should be protected from this defendant who in my opinion would probably have continued committing criminal acts had he not been caught and arrested in this case. I do consider that. Also the Court considers that measures less restrictive than confinement in Mr. Currie's case have been tried without success.

In this particular case, I do consider that Mr. Currie based upon this prior record I talked about is simply not an appropriate candidate for any type of probation.

Based on the aforementioned facts, law, and analysis, the trial court properly denied alternative sentencing. Currie has not met his burden on appeal of showing that his sentence of confinement was improper, and therefore, he is not entitled to relief.

## **CONCLUSION**

We conclude that the trial court properly denied alternative sentencing in this case, thereby requiring the Defendant-Appellant to serve an effective eight-year sentence, pursuant to the terms of his guilty plea agreement. Accordingly, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE