IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 10, 2017 Session

## STATE OF TENNESSEE v. SIDNEY B. RAY

**Appeal from the Criminal Court for Knox County**
No. 108994   Bobby R. McGee, Judge

_____

### No. E2017-00228-CCA-R3-CD

_____

Pursuant to a plea agreement, the Defendant, Sidney B. Ray, entered a guilty plea to ten felonies and one misdemeanor and received an effective sentence of fourteen years, with the manner of service to be determined by the trial court.  Following a sentencing hearing, the trial court denied the Defendant's request for an alternative sentence and ordered his sentence to be served in confinement.  In this appeal, the Defendant contends that the trial court erred in determining the manner of service of his sentence.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Forrest L. Wallace, Knoxville, Tennessee, for the Defendant, Sidney Brian Ray.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Charme P. Allen, District Attorney General; and Nate Ogle, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

Between April 19 and May 25, 2016, the Defendant engaged in a crime spree involving the following offenses: aggravated burglary by entering Jennifer Ray Gregg's residence and taking property valued over $20,000 (count one); theft by entering his parents' residence and taking property valued over $11,000 (count two); theft by having his father pawn a previously rented Stihl leaf blower and Stihl chainsaw (count three); burglary of a vehicle by taking Janice Edwards's wallet while she was pumping gas (count four); theft by pawning to Payday Express Pawn $230 worth of items purchased on a closed bank account (count five); forgery by writing his father's name on a check

from a closed bank account to purchase a ring, valued at $4,895, from Rick Terry Jewelry Design (count six); theft by taking Christine Cotton's purse, valued at $690, from her shopping cart at Kroger (count seven); identity theft by using Cotton's credit cards to make purchases, valued at $773.09, at various locations (count eight); and evading arrest and reckless endangerment by refusing to comply with an officer's command to exit his car and fleeing at high speed through a crowded parking lot (counts nine and ten). Count 11 was a misdemeanor, for which the State did not offer any supporting facts.

In his December 30, 2016 Sentencing Memorandum, the Defendant requested probation "with any additional conditions the Court[ ] deems necessary for [him] to be supervised in the community." Further, the Defendant asserted that "a sentence on probation coupled with a halfway house and continued treatment, would provide the least severe measure necessary to comport with the Sentencing Act." No mitigating or enhancement factors were identified by Defendant's counsel or the State.

A sentencing hearing was conducted on January 20, 2017, at which time the State introduced a presentence investigation report ("presentence report"), a report from the Board of Probation and Parole regarding the Defendant's suitability for Enhanced Probation with Conditions ("Enhanced Report"), and a Community Alternatives to Prison Program ("CAPP") Report. Significantly, all of the alternative sentencing agencies had declined to accept the Defendant as an appropriate candidate for their programs. The presentence report showed that the Defendant had a criminal history consisting of multiple thefts, forgery, multiple assaults, and reckless driving. He had been previously placed on probation which was twice revoked. The Defendant had also previously entered two different drug treatment programs and failed to complete them. Finally, the Defendant completed a local drug court program.

Cynthia Turner Ray, the Defendant's mother, testified that the Defendant began to use marijuana in the sixth grade and progressed to OxyContin and codeine. She wanted to have social contact with the Defendant but did not want him in her home. She confirmed that the Defendant was receiving treatment for Attention Deficit Disorder ("ADD") and depression in jail. However, she did not think prison programs were very helpful to drug addicts because they were too short and did not provide addicts the help they needed. She said that an outpatient or inpatient program would be more beneficial for the Defendant to integrate back into society. Ray acknowledged that the Defendant's prior probation had been revoked. She was not aware of the ten-month substance abuse program in which he participated while in prison or that he failed to complete some treatment programs. She also acknowledged that the Defendant had relapsed after receiving drug treatment.

The State recognized that, since June, the Defendant had completed the Intensive Treatment Program ("ITP") provided by the sheriff's office, and the ITP completion certificate was introduced as exhibit 4. Defense counsel argued that the Defendant committed these crimes over the course of sixty days due to addiction, debt, depression, and anxiety. Additionally, defense counsel noted that since the Defendant was receiving medication at the detention facility, his mental health issues had "sort of righted." Defense counsel acknowledged that the Defendant's probation had been revoked previously but nevertheless requested the court to sentence the Defendant to a year of split confinement or to allow him to stay in custody and transfer to a halfway house at a later time.

The State argued against probation or split confinement due to the nature and circumstances of the offenses and the Defendant's extensive criminal history. At the conclusion of the hearing and following the arguments of counsel, the trial court imposed a sentence of confinement. The Defendant then filed a timely appeal.

## ANALYSIS

On appeal, the Defendant argues that the trial court abused its discretion in denying his request for probation or alternative sentencing. He asserts that the trial court's imposition of a sentence of incarceration was both excessive and inconsistent with the purposes of sentencing. Specifically, he contends that (1) the trial court misapplied enhancement factor one by failing to address its merits when sentencing the Defendant; (2) the trial court failed to apply mitigating factor thirteen by not giving weight to the Defendant's acceptance of responsibility, his mother's continued support, his efforts at rehabilitation, and his allocution statement; and (3) the trial court failed to impose a community corrections sentence under the special needs exception. The State responds, and we agree, that the trial court properly denied probation or alternative sentence.

"[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). A trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in sections 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement

the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b)(1)-(7). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5). The court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a). When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." State v. Sihapanya, 516 S.W.3d 473, 476 (Tenn. 2014).

Finally, in determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. §§ 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In denying probation and imposing confinement, the trial court reasoned as follows:

- 4 -

All right. All right. These are difficult cases. The Court has reviewed the Presentence Investigation. It does find the defendant to be a high risk for probation, for release into the community.

I've reviewed the Enhanced Probation report. They find that he's not appropriate for their program. And I've reviewed the CAPP Report. They also find that he's not appropriate for their program. All three reports are based on, actually, many of the same factors.

He has an extensive criminal history. He's been given multiple opportunities to succeed on probation, on community release. He, so far, has always relapsed. He has -- I believe he has already served time in prison; is that right?

. . .

So he's been to prison; he's been confronted with the reality of going to prison. When he got out, he still went right back to the drugs.

I agree with his mother, 90 days is not enough time to be cured from drug addiction. This Court has attended conferences and heard experts medical and clinical experts tell us that -- to be -- to be, what you put in any sense, called, cured – to be cured from an addiction, a hard-core addiction to opiates and opioids, it is a process that requires something like five years. You know, 90 days is not going to do it. Three months is not going to do it.

And what that means is, that the programs we do have and can offer are often simply not going to cure the problem for the hard-core opiate and opioid addict. There's some people and some addictions that do respond to shorter periods of time.

What Mr. Ray has demonstrated repeatedly that he will--given his freedom, he will start – go back to the bad decisions. He'll find the drugs and then we will have a trail of victims again.

Now, this Court does have a policy, if any of our probation agencies indicate to the Court that they find that there's a reasonable probability that he can be successful on probation, then I will make a placement, even though, many times, over strenuous objection by the State.

But concomitantly, when all three agencies are telling me that he's simply not able to be trusted, then the Court has to -- has to face its own

responsibility to the public. There are many – in Mr. Ray's record, there are many victims, and this Court has to be concerned about the next victim.

This is not a question about whether Mr. Ray is a good person or not. He seems to be quite sincere and I believe he means every word he said, but the Court has to go by the evidence. And the evidence is, he cannot straighten up. He cannot get away from the drugs.

And at this point, the Court would have to find that if would be irresponsible to place Mr. Ray in any -- on any program back out into the community---release to the community. This Court takes no pleasure in denying anyone probation, but in this case, the circumstances are compelling.

And, accordingly, the Court does deny probation and does sentence Mr. Ray to serve a total effective sentence of 14 years in the custody of the Tennessee Department of Corrections.

Although the Defendant correctly observes that the trial court did not explicitly reference any of the enhancement or mitigating factors, the record shows that the trial court properly considered the sentencing principles and relevant facts and circumstances. The Defendant's "concern" that the trial court improperly considered his pending charges when ordering confinement is simply not borne out by the record. The record also belies the Defendant's claim that the trial court failed to consider his "remorsefulness for committing these crimes, his ready admission of guilt, his attempts to assist law enforcement, rehabilitation following commission of these crimes, and his accepting responsibility for his actions." The trial court properly considered the Defendant's allocution statement and acceptance of responsibility in conjunction with the Defendant's history of offenses, probation, and treatment. Because the record clearly shows that the Defendant had a long history of criminal conduct and measures less restrictive than confinement had frequently been applied unsuccessfully to him, the trial court properly denied the Defendant's request for probation.

Next, the Defendant contends that the trial court erred by denying his request for some other alternative sentence. He specifically takes issue with the trial court's failure to explicitly mention in its ruling his application for community corrections or his request to be considered under the special needs exception.[1] To be clear, the extent of the

---

[1] A defendant may qualify for community corrections based upon the special needs provision found at Tennessee Code Annotated section 40-36-106(c), which provides, in pertinent part:

Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse,

Defendant's request for an alternative sentence was a single sentence in his memorandum which did not explicitly request any relief under the Community Corrections Act. Nevertheless, our review of the record supports the trial court's denial of community corrections. As an initial matter, the Defendant's convictions for reckless endangerment and aggravated burglary are crimes against a person, and he is therefore statutorily ineligible for community corrections. T.C.A § 40-36-106(a)(1)(B)(2006). The remaining property related convictions do not foreclose the Defendant from consideration for community corrections. State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Although the record established that the Defendant struggled with a history of chronic drug abuse that reasonably related to or contributed to his criminal conduct, it does not establish that his drug abuse was treatable in the community rather than in a correctional institution.[2] The Defendant had been given multiple opportunities to address his addiction, all of which failed. Because none of the programs available in the community to treat the Defendant recommended him for enhanced probation, the trial court determined, and we agree, that he was not an appropriate candidate for release on community corrections under the special needs exception. Accordingly, the record supports the trial court's imposition of a sentence of confinement, and the Defendant is not entitled to relief.

## CONCLUSION

Based on the aforementioned authorities and reasoning, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

---

or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under this chapter.

[2] Under Boston, the trial court was required to determine whether: (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems, (2) these factors were reasonably related to and contributed to the offender's criminal conduct, (3) the identifiable special need (or needs) are treatable, and (4) the treatment of the special need could be served best in the community rather than in a correctional institution. 938 S.W.2d at 439.