IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 21, 2021

FILED

MAR 0 7 2022

Clerk of the Appellate Courts
Rec'd By _____

## STATE OF TENNESSEE v. ANDREA GONZALEZ MARTINEZ

**Appeal from the Criminal Court for Davidson County**
**No. 2019-A-211      Steve R. Dozier, Judge**

_____

### No. M2020-01648-CCA-R3-CD

_____

The defendant, Andrea Gonzalez Martinez, pleaded guilty to felon in possession of a handgun, and the trial court imposed a sentence of sixteen years' incarceration in the Tennessee Department of Correction. On appeal, the defendant argues the trial court erred in denying his request for alternative sentencing. After reviewing the record and considering the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jay Umerley (on appeal), and Lindsay Smith (at guilty plea and sentencing hearings), Nashville, Tennessee, for the appellant, Andrea Gonzalez Martinez.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and Jeffrey George, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

### I.    Guilty Plea

On September 24, 2020, the defendant entered a best interest plea to felon in possession of a handgun, with sentencing to be determined by the trial court.[1] As part of

_____

[1] The defendant was originally indicted for attempted first degree murder, aggravated assault, and employing a weapon during a dangerous felony. The attempted first-degree murder charge was reduced to felon in possession of a handgun as part of the plea, and the remaining counts were dismissed.

the plea agreement, the State and the defendant agreed that the defendant would be sentenced as a Range II offender, and the defendant's sentencing range would be twelve to seventeen years. The facts underlying the plea, as explained by the State, were as follows:

[H]ad this case gone to trial, the State would have produced witnesses and evidence to show this offense occurred on July 31, 2018. On that date, the victim was at the intersection of Lafayette Street and Second Avenue South and McCann Street which is here in Davidson County. While standing outside at that this (sic) intersection, the victim was shot once in the abdomen.

After he was shot, he ran to the front door of a nearby home on Second Avenue South which is [the] home of a witness. And the witness stated that he heard a gunshot shortly after a knock on his door. When he answered the door, the victim stated that he had been shot an[d] collapsed. The witness called 911 and asked for an ambulance to come to the scene, which they did.

Once Metro police arrived, they encountered the victim. He could not communicate well due to the gunshot to his abdomen, but he was able to state a male black in his 30's shot him near the above-stated intersection. He was transported to Vanderbilt Hospital. Crime scene investigators with Metro Police Department arrived to photograph the scene and recovered a 9-millimeter cartridge case at that location.

On July 31st of '18 [at] the Vanderbilt hospital emergency room, the victim was discovered to have a gunshot entry wound to his lower left abdomen and an exit wound in his right buttock. The CT scan revealed that he had sever[e] injuries and some -- to some internal organs. He was in life threatening condition and he had to go into emergency surgery, but he did recover.

In September of '18 during an interview with the detective, the victim stated that he -- after he had recovered, he stated that he had purchased crack from the individual that shot him using -- the day prior using a fake $20 bill. And on the day of the shooting, the defendant approached him and confronted him about the fake money that he had used the day before. The defendant grabbed him and -- as the victim tried to pull away and shot him in the abdomen.

The victim described the weapon as a black 9-millimeter handgun which matches the cartridge casing that was found. He described the

- 2 -

defendant as a black male in his late 20's with dreads that goes by the name of Black and lives off of 1st Avenue South.

Based on that information, Detective W[h]itfield developed the defendant as a suspect and as well as a lot of other information. On September 27th, 2018, the victim did make a positive identification of the suspect -- of the defendant, Mr. Martinez in a random photo array.

## II.    Sentencing Hearing

During the sentencing hearing, the State introduced a copy of the defendant's presentence report and the victim impact statement.

Detective Kyle Whitfield with the Metro Nashville Police Department testified that he responded to the scene of a 911 call regarding a shooting on July 31, 2018, and discovered the victim on the front porch of a residence with a gunshot wound to the abdomen. The bullet had entered the victim's left abdomen and exited his right buttocks, causing internal damage to his bladder and bowels. Detective Whitfield later interviewed the victim at the hospital and learned the victim had been shot after purchasing crack cocaine with a counterfeit $20 bill. The victim informed Detective Whitfield that the shooter went by the nickname "Black" and provided "Black's" address. Using this information, Detective Whitfield developed the defendant as a suspect and prepared a photographic lineup from which the victim was able to identify the defendant. Additionally, the victim's girlfriend told Detective Whitfield that the defendant had been looking for the victim in the days prior to the shooting.

Corporal Brittany Davis with the Davidson County Sheriff's Office testified that she was working at the Correctional Development Center for men in March 2019. When she arrived for her shift one morning, she was approached by an inmate, who informed her that he had been attacked and asked her to look at the security cameras. When Corporal Davis viewed the security camera footage, she observed the defendant and another man approach the inmate on his bunk and began to hit and kick him. The defendant attempted to pull the inmate off of the bed but was unable to do so. Corporal Davis testified that the inmate pressed charges through the in-house disciplinary board and that the defendant was found guilty of the assault and received thirty days in solitary confinement.

The defendant then called Karen McKinnion as a witness. Ms. McKinnion, the defendant's mother, stated that the defendant's problems with the criminal justice system began when he was approximately sixteen. Although she was unsure when the defendant began using drugs, she knew that he used marijuana as a teenager and that it made him "moody sometimes." The drugs also caused him to "stay up all night and then sleep all

day," interfering with his ability to stay in school or hold down a job. Ms. McKinnion testified the defendant first went to prison at age seventeen for ten years.

Although the prison did not provide the defendant any resources to assist him upon his release, Ms. McKinnion helped the defendant obtain a job and "took him to a place on Lafayette where convicts would go and they would help them with resources." However, she did not "know what happened with that." Ms. McKinnion admitted the defendant did not last long at his job because "he just didn't want to work at the time." She acknowledged the defendant had spent the two years between his initial release from prison and his arrest in this case in and out of jail. Although Ms. McKinnion promised to help support the defendant "all [she] could" if he were released from jail, she stated that she could not offer him a place to live because she lived with her oldest son and his family.

The defendant testified on his own behalf, stating that he began using marijuana and cocaine as a teenager and that he went to prison for the first time at the age of seventeen. When he was released ten years later, the defendant had lived his entire adult life in prison, and he was not provided the needed resources to transition to life on the outside. Additionally, while in prison, the defendant was diagnosed with bipolar disorder and prescribed Zoloft, but upon his release, he did not have access to his medication. The defendant testified that, prior to his arrest in this case, he was using heroin, cocaine, and marijuana every day.

The defendant stated he had completed three certificates since his arrest in the instant case: a drug program called New Avenues; a parenting class; and a certificate for horticulture. The defendant obtained the certificate because he "thought [he] was getting out a couple of years ago," and he was going to get a job with a landscaping company. The defendant testified he had been accepted into Sober Living of America, a halfway house, which would "[h]elp [him] stay focus[ed] and help [him] keep [his] mind focused." According to the defendant, this faith-based organization would assist him with finding a job and obtaining his driver's license. Because the defendant would also like to begin taking his bipolar medication again, he signed up for Centerstone.[2] Regarding his three-year-old child, the defendant stated his goal was to "[b]e the best father [he] can be." The defendant testified that he "want[ed] to take full responsibility for [his] actions."

On cross-examination, the defendant admitted he obtained the horticulture certificate because he believed the case would be dismissed in general sessions due to the victim's absence. However, he denied instructing people to talk to the victim about not showing up to court. The defendant could not recall jail phone calls in which he stated,

---

[2] Centerstone is a national non-profit that provides "mental health and substance use disorder treatments." Centerstone, http://www.Centerstone.org/about/ (last visited Dec. 8, 2021).

"tell them if they see dude they know what to tell them and man I said don't show up," and, "If he don't show up three times I will be good, they got to let me go." The defendant acknowledged getting into two fights while in prison awaiting trial in this case. Regarding the assault Corporal Davis testified to, the defendant stated he took full responsibility for the assault and claimed that it occurred when the inmate called him "gay names and [said] he [was] going to do something." The second assault occurred in August of 2019 when an inmate called the defendant a "b***h." The defendant received thirty days in solitary confinement for each assault. Regarding the shooting in this case, the defendant admitted to being involved but denied pulling the trigger. The defendant stated that he had never used the nickname "Black" and did not go to the victim's house to look for the victim. The defendant admitted to selling the victim crack cocaine and that he continued selling the victim drugs after the shooting. On redirect, the defendant testified he had not received any write-ups in the past year and currently worked in the prison kitchen.

The State presented rebuttal proof from Terry Faimon, an investigator with the Davidson County District Attorney's Office, who testified he received a request to pull and listen to the defendant's jail calls. Mr. Faimon agreed that the quotes read by the prosecutor during the defendant's cross-examination matched the notes he had taken verbatim from the defendant's jail phone calls.

In sentencing the defendant, the trial court considered the evidence presented during the guilty plea and sentencing hearings, including the presentence report and the arguments of counsel. In reviewing the applicable enhancement factors, the trial court found enhancement factors (1), the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; (6), the personal injuries inflicted upon . . . the victim [were] particularly great; and (10), the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(1), (6), (10). The trial court did not find any applicable mitigating factors. After applying and weighing the applicable enhancement and mitigating factors and considering the facts and circumstances of the case, the trial court sentenced the defendant as a Range II offender to sixteen years at 35%.

In considering alternative sentencing, the trial court noted that the defendant's seven prior felony convictions occurred during a "short-lived crime spree of two discrete dates" and required state-mandated prison terms thereby making the defendant ineligible for community corrections. While the trial court acknowledged the defendant was eligible for alternative sentencing in this case, it ultimately determined that incarceration was appropriate. The trial court found that, based on the "multiple enhancement factors," sentencing the defendant to community corrections would endanger the public. Specifically, the trial court noted that the defendant's "violent behavior has continued while incarcerated."

*Analysis*

The defendant's sole issue on appeal is the trial court's denial of alternative sentencing. Specifically, the defendant argues the trial court "did not provide specific findings of fact upon which the potential for rehabilitation determination was made." The State contends the trial court acted within its discretion in ordering the defendant serve his sentence in confinement.

Generally, alternative sentencing is available if the sentence actually imposed is ten years or less. Tenn. Code Ann. § 40-35-303(a). A defendant who is convicted as an especially mitigated or standard offender of a Class C, D, or E felony is considered a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6)(A). In determining whether incarceration is appropriate, the trial court should consider whether:

> (A)    Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B)    Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;
>
> (C)    Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C). Additionally, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(4), (5).

The purpose of the Community Corrections Act of 1985 was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" Tenn. Code Ann. § 40-36-103(1). Eligible offenders under the Community Corrections Act include:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;

-6-

(B) Persons who are convicted of property-related, or drug- or alcohol related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and

(F) Persons who do not demonstrate a pattern of committing violent offenses.

*Id.* § 40-36-106(a)(1)(A)-(F). Under the special needs provision of the statute, an offender who would not otherwise be eligible for community corrections under subsection (a), and "who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution," may be considered eligible for alternative sentencing under subsection (c). *Id.* § 40-36-106(c). To be eligible for community corrections under subsection (c), a defendant must first be eligible for probation. *State v. Kendrick*, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999) (citing *State v. Staten*, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989)).

Here, the defendant pled guilty to a B felony and was sentenced to sixteen years. Tenn. Code Ann. § 39-17-1307(b)(2). Therefore, he was not eligible for probation. *See Id.* § 40-35-303(a) ("A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less[.]"). Moreover, the defendant was not eligible for community corrections under subsection (a) because his offense involved "the use or possession of a weapon" or subsection (c) because he was not eligible for probation. *See Id.* § 40-36-106(a)(1)(D); *Kendrick*, 10 S.W.3d at 655. Because the defendant was ineligible for alternative sentencing, the trial court did not abuse its discretion in denying an alternative sentence. The defendant is not entitled to relief.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

J. ROSS DYER, JUDGE